PEOPLE v CAMERON

Docket No. 293119. Submitted November 9, 2010, at Detroit. Decided
    January 4, 2011. Approved for publication February 15, 2011, at
    9:10 a.m.
  Stanley W. Cameron was charged with domestic violence and tried by
    a jury in the Oakland Circuit Court. Before trial, the prosecution
    sought a ruling permitting it to introduce evidence of defendant's
    prior bad acts involving the victim and another woman. The court,
    John J. McDonald, J., ruled that the evidence was admissible. At
    trial, the jury heard evidence that each woman had been hit by
    defendant while she had been his girlfriend, and the jury found
    defendant guilty. Defendant appealed.

    The Court of Appeals *held*:

    1. MCL 768.27b allows a trial court to admit relevant evidence
  of other domestic assaults to prove any issue, even the character of
  the accused, if the evidence meets the requirements of MRE 403.
  The Legislature intended that in domestic violence cases, other
  acts of domestic violence committed by the defendant are admis-
  sible because a complete picture of the defendant's history might
  shed light on the likelihood that a given crime was committed. The
  trial court properly held under MRE 403 that any prejudicial effect
  of admitting the evidence that the defendant had previously
  committed domestic assault against the victim and another
  woman did not substantially outweigh the probative value of the
  evidence and did not abuse its discretion by admitting the evidence
  because it was relevant to the victim's credibility, it was relevant to
  show that defendant had acted violently toward the victim, and it
  demonstrated that his actions were not accidental. The testimony,
  along with the other proofs at trial, was sufficient to support the
  jury's verdict.

    2. For purposes of this case, in which the victim was an
  ex-girlfriend, the relevant elements of a domestic assault offense
  include (1) the commission of an assault or an assault and battery
  and (2) a dating relationship between the parties. Defendant
  denied that an assault or an assault and battery occurred. A
  battery is an intentional, unconsented to, and harmful or offensive
  touching of the person of another or of something closely con-

nected with the person. It does not matter whether the touching caused an injury. An assault is an attempt to commit a battery or an unlawful act that places another person in reasonable apprehension of receiving an immediate battery. Every battery necessarily includes an assault because a battery is the very consummation of the assault. Intent may be inferred from all the facts and circumstances. Only minimal evidence from which intent may be inferred need be presented. The evidence supported an inference that defendant intended to commit an assault or an assault and battery against the victim, and sufficient evidence existed to support the verdict.

3. The verdict was not against the great weight of the evidence.

Affirmed.

1. CRIMINAL LAW — DOMESTIC VIOLENCE — EVIDENCE — PRIOR BAD ACTS.

MCL 768.27b allows trial courts to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the requirements of MRE 403; under MRE 403 the reviewing court must first decide if the evidence was unfairly prejudicial and then weigh the probativeness or relevance of the evidence against the unfair prejudice to determine whether any prejudicial effect substantially outweighed the probative value of the evidence.

2. ASSAULT AND BATTERY — DOMESTIC VIOLENCE — ELEMENTS OF BATTERY — ELEMENTS OF ASSAULT.

A violation of the domestic violence statute requires the commission of an assault or an assault and battery; a battery is an intentional, unconsented to, and harmful or offensive touching of the person of another or of something closely connected with the person; it does not matter whether the touching caused an injury; every battery includes an assault; an assault is an attempt to commit a battery or an unlawful act that places another person in reasonable apprehension of receiving an immediate battery; intent may be inferred from all the facts and circumstances, and only minimal circumstantial evidence from which intent may be inferred need be presented (MCL 750.81[2]).

*Bill Schuette*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *John S. Pallas*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

*Law Offices of Robert J. Boyd, III, P.C.* (by *Robert J. Boyd, III*), for defendant.

Before: OWENS, P.J., and WHITBECK and FORT HOOD, JJ.

PER CURIAM. Defendant Stanley Wayne Cameron appeals by right his conviction for domestic violence resulting from the assault and battery of his ex-girlfriend, Kristie Yacheson. The trial court found Cameron guilty of domestic violence (third offense).[1] The trial court subsequently sentenced Cameron as a second-offense habitual offender[2] to six months to three years in prison. We affirm.

## I. BASIC FACTS

### A. DOMESTIC VIOLENCE INCIDENT

During the early morning hours of September 19, 2008, Cameron allegedly abused his ex-girlfriend, Kristie Yacheson. Cameron and Yacheson had lived together and dated off and on from October 2005 until September 2008. At the time of incident, however, Yacheson lived alone in an apartment on 14 Mile Road in the City of Royal Oak.

On the evening of September 18, 2008, Yacheson invited several friends to her apartment. Cameron sent Yacheson a text message asking if he could come over. Although a court order prohibited Cameron from being at Yacheson's apartment, Yacheson allowed Cameron to visit because he was acting nice and because she still loved him. Yacheson sent Cameron a text message saying he could come over as long as he behaved appropriately. Cameron asked Yacheson if she had any

---

[1] See MCL 750.81(4).

[2] See MCL 769.10.

food, and she replied that she did not. Yacheson did not ask Cameron to bring food over, and she did not expect him to bring food. However, when Cameron arrived about 8:00 p.m., he brought some food and beer with him. Because she felt safe with her other friends present, Yacheson let Cameron into her apartment.

Once inside the apartment, Cameron took the food and beer into the kitchen, placed at least one of the beers into the freezer, and began cooking dinner for everyone. At first, Cameron behaved appropriately. However, once everyone started drinking, Cameron's demeanor changed. Yacheson had two or three beers, a couple of shots of whiskey, and a shot or two of brandy. Cameron drank about the same amount, and he began to show signs of intoxication. Yacheson became increasingly concerned about Cameron's behavior because she knew from past experience that Cameron sometimes became violent when he drank.

At one point, Yacheson and Cameron entered the kitchen while Yacheson's friends remained in the living room. While in the kitchen, Yacheson and Cameron began arguing because Yacheson suggested that Cameron slow down his drinking. Eventually, the arguing turned into yelling, and Yacheson told Cameron to leave her apartment. Cameron opened the freezer to retrieve the beer that he brought, but Yacheson said no, and she slammed the freezer shut. Cameron allegedly then pushed Yacheson twice. The second time that Cameron allegedly pushed Yacheson, he pushed her against the refrigerator and stove with enough force to knock the refrigerator and stove askew. Yacheson then tried to push Cameron away, and Cameron allegedly punched or jabbed her in the stomach. Yacheson told her friends in the other room to call 911. Again, Yacheson told Cam-

eron to leave, and she pushed Cameron out the door of her apartment. As Cameron exited, the police arrived.

Officer Donald Scher of the Royal Oak Police Department arrived at Yacheson's apartment at 1:06 a.m. on September 19, 2008.[3] The dispatch informed Officer Scher that a no-contact order prohibited Cameron from being near Yacheson's home. As Officer Scher approached the apartment building, he saw Cameron leaving the premises on the sidewalk. Officer Scher recognized Cameron from prior police calls at the apartment. When Officer Scher yelled for Cameron to stop, Cameron ducked into a locked stairwell at the end of the apartment building. Officer Scher walked around the building to see where Cameron might exit.

Meanwhile, Officer Kathy Szydlowski of the Royal Oak Police Department, who arrived about the same time as Officer Scher, spoke with Yacheson. Officer Szydlowski observed Yacheson crying hysterically. Officer Szydlowski also observed that Yacheson appeared very frightened of Cameron.

When Officer Scher returned to the front of the building, Yacheson pointed out the direction in which she had seen Cameron leaving. Officer Scher spotted Cameron walking westbound away from the building. Again, Officer Scher called out for Cameron to stop, but Cameron began walking faster. Officer Scher lost sight of Cameron as he passed the corner of the building. Officer Scher gave chase, and as he rounded the corner of the building, he heard branches moving in a nearby evergreen tree. He saw Cameron trying to hide under the branches of the tree. Officer Scher radioed that he had found the suspect, and then he arrested Cameron.

---

[3] At the time of trial, Officer Scher was unavailable to testify, so a redacted version of his preliminary examination testimony was read into the record without objection.

Cameron struggled as Officer Scher tried to handcuff him, and Officer Scher had to use pepper spray on him. Officer Szydlowski joined Officer Scher and assisted him in handcuffing Cameron.

### B. VICTIM'S STATEMENTS TO THE POLICE

After Officer Scher placed Cameron into the back of the police car, Officer Szydlowski interviewed Yacheson.[4] Officer Szydlowski observed that Yacheson appeared to be very upset and that she remained upset throughout the interview. Yacheson told Officer Szydlowski that she had some friends over, she heard a sound at the door, and Cameron opened the door and came into the apartment. Yacheson also told Officer Szydlowski that Cameron charged toward her, backed her into the kitchen, and then pushed her against the refrigerator several times. Yacheson stated that although she tried to get away, Cameron grabbed her from behind and pushed the front of her body against the refrigerator. Yacheson said that she yelled for her friend to call the police, and when Cameron heard that the police were coming, he left the apartment. Yacheson also said that a no-contact order barred Cameron from contacting her, which Officer Szydlowski's dispatcher verified. Officer Szydlowski asked Yacheson to write out a statement, and she did so.

The incident left Yacheson sore, but she did not display any obvious or visible injuries. During her investigation, Officer Szydlowski did not observe any disarray or signs of a struggle in the kitchen, nor did she see any signs of injury on Yacheson. Furthermore, Yacheson did not tell Officer Szydlowski that she had

---

[4] The prosecution filed a pretrial notice of intent to present evidence of the victim's statements under MCL 768.27c.

invited Cameron to come over to her apartment earlier in the evening, that he had brought groceries and cooked dinner, and that he had been there for several hours.

At trial, Officer Szydlowski testified that she wanted to ask Yacheson more questions, but Yacheson's extreme emotional state had rendered her incapable of giving any more information at the scene.

#### C. PRETRIAL MOTION TO INTRODUCE PRIOR-BAD-ACTS EVIDENCE

On October 20, 2008, pursuant to MCL 768.27b, the prosecutor sought a ruling permitting it to introduce evidence of prior bad acts involving Cameron and Yacheson, as well as Cameron and his ex-girlfriend, Pamela Ponder. Over defense counsel's objection, the trial court ruled that the prosecutor could introduce other bad-acts evidence at trial to show Cameron's character.

#### D. PRIOR-BAD-ACTS EVIDENCE PRESENTED AT TRIAL

##### 1. PRIOR ACTS AGAINST YACHESON

At trial, Yacheson testified that Cameron had previously physically attacked her. On March 5, 2006, when Yacheson and Cameron lived at the Admiral Hotel in Clinton Township, Cameron punched her on the side of her head, and she fell to the ground. Cameron grabbed Yacheson's cell phone so that she could not call 911, and he broke her phone when he threw it aside. Cameron told Yacheson that he would kill her if she called the police. He then stomped on her and repeatedly hit her. He called her a "whore" and other names as he hit her. Yacheson called the police.

Yacheson also testified that four additional incidents occurred between June 2006 and May 2008. In

June 2006, Yacheson lived at the Eastland Hotel in Eastpointe. On June 16, 2006, as Yacheson and Cameron walked outside, Yacheson said hello to a male friend. Cameron then punched the side of Yacheson's head. Another incident occurred on June 29, 2006, when Yacheson and Cameron started arguing about Yacheson's cell phone. Cameron demanded that Yacheson hand over the memory card for her phone, and Yacheson refused. Cameron then punched her. The fourth incident occurred on January 16, 2008, when Yacheson lived at the apartment in Royal Oak. Cameron wanted to see Yacheson, but she would not let him enter the apartment. Cameron, who had been drinking, forced his way in through a screen door to get into the apartment. Cameron then forced his way into the bedroom, where Yacheson had barricaded herself, and he took Yacheson's phone away from her. Cameron punched her in the face. The fifth incident occurred on May 16, 2008, when Cameron came into Yacheson's apartment and punched her. When Yacheson tried to call the police, Cameron broke her flip phone in half. The neighbors called the police. At trial, Yacheson testified that she had stayed in the off-and-on relationship with Cameron despite the assaults because he apologized each time and because she loved him.

### 2. PRIOR ACTS AGAINST PONDER

At trial, the prosecutor also elicited testimony that Cameron had also abused another ex-girlfriend. Pamela Ponder testified that she dated Cameron for a few months in 2001. In May 2001, she told Cameron that she wanted to end their relationship. Cameron reacted angrily.

Several other incidents occurred within a week of the breakup. During one incident, Cameron accused Ponder of seeing another man. Cameron hit her on the chin with an open hand. Another incident occurred when Ponder picked up her six-year-old son from school. Ponder had a male friend with her. Because it was warm, Ponder rolled down the windows of her truck. Cameron suddenly ran up and punched Ponder in the throat. A third incident occurred on May 7, 2001. Cameron threw a frozen beer can at Ponder's face. The impact broke her nose and broke some of her teeth.

### E. JURY VERDICT

After hearing the evidence, the jury found Cameron guilty of domestic violence.[5] The trial court sentenced Cameron on May 4, 2009. The recommended minimum sentence under the sentencing guidelines ranged from 2 to 21 months in prison. Defense counsel asked for a minimum sentence of 10 months in prison, to be served concurrently. As previously stated, the trial court sentenced Cameron, as a second-offense habitual offender, to six months to three years in prison for domestic violence (third-offense) to be served consecutively to the sentence that Cameron was already serving.[6] Cameron now appeals.

---

[5] Before trial, the prosecutor had dismissed additional charges of malicious destruction of police property, MCL 750.377b, and illegal entry, MCL 750.115.

[6] Cameron was released on bond at the time of the instant offense. In fact, on the same day Cameron was arraigned in this case, he was sentenced in Oakland Circuit Court Case No. 2008-221126-FH to one to two years in prison for interfering with electronic communications and one year for domestic violence (second offense). Those offenses involved the same victim as this case. Cameron committed the offense in this case while awaiting sentencing in the earlier case.

## II. PRIOR-BAD-ACTS EVIDENCE

### A. STANDARD OF REVIEW

Cameron argues that the trial court should have excluded evidence of his prior bad acts because it was unfairly prejudicial under MRE 403. Cameron further argues that the jury convicted him of domestic violence based on Yacheson and Ponder's testimony about prior incidents where Cameron hit them. Cameron claims that the jury essentially heard Yacheson and Ponder's testimony and then improperly concluded that because Cameron assaulted these women in the past, he must have assaulted Yacheson this time. Cameron contends that, as a result, the trial court reversibly erred when it determined that the prior-bad-acts evidence could be introduced at trial because the prejudicial effect outweighed the probative value of the evidence.

We will not question a trial court's decision whether to admit evidence absent an abuse of discretion.[7] The abuse of discretion standard involves more than just a difference of opinion.[8] "Further, a trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion."[9]

### B. LEGAL STANDARDS

During the preliminary hearing on October 9, 2008, Yacheson testified that Cameron had a pending domestic violence charge for a prior confrontation between Cameron and Yacheson. Subsequent discovery revealed additional incidents between Cameron and Yacheson,

---

[7] *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002).

[8] *Id.*

[9] *Id.*; *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

and Cameron and his ex-girlfriend Ponder. Before trial, the prosecutor moved to introduce these prior bad acts at trial. Over defense counsel's objection, the trial court granted the prosecutor's motion and determined that Cameron's prior bad acts of domestic violence were admissible under MCL 768.27b. MCL 768.27b(1) states:

> Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if not otherwise excluded under Michigan rule of evidence 403.[10]

The language of MCL 768.27b clearly indicates that trial courts have discretion "to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403."[11] In analyzing a sister statute,[12] this Court has previously acknowledged that the Michigan Legislature intended to allow juries "the opportunity to weigh a defendant's behavioral history and view the case's facts in the larger context that the defendant's background affords."[13] MCL 768.27a deals primarily with prior-bad-acts evidence involving crimes

---

[10] MCL 768.27b(5)(a)(*i*) and (*ii*) define "domestic violence" as, *inter alia*, "[c]ausing or attempting to cause physical or mental harm to a family or household member," or "[p]lacing a family or household member in fear of physical or mental harm." Further, MCL 768.27b(5)(b)(*iv*) defines "family or household member" as any "individual with whom the person has or has had a dating relationship."

[11] *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007); see also *People v Schultz*, 278 Mich App 776, 778; 754 NW2d 925 (2008) (noting that, unlike MRE 404(b)(1), MCL 768.27b only requires a showing of "the transparency of a person's character as justification for admitting evidence").

[12] MCL 768.27a.

[13] *Pattison*, 276 Mich App at 620 (noting that legislatively enacted MCL 768.27a alters the court-created MRE 404(b)(1) rule of admissibility for

against minors.[14] However, because of the similarities in the language of MCL 768.27a and 768.27b, we believe that the Michigan Legislature intended the same policy to apply to domestic violence situations under MCL 768.27b. Thus, prior-bad-acts evidence of domestic violence can be admitted at trial because "a full and complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed."[15]

C. APPLYING MCL 768.27b TO CAMERON'S PRIOR BAD ACTS

In this case, the prosecutor charged Cameron with domestic violence pursuant to MCL 750.81(2).[16] Then, to support the domestic violence charge, the prosecutor moved to admit evidence of Cameron's prior bad acts under MCL 768.27b. The statutory language and policy considerations of MCL 768.27b clearly demonstrate the Michigan Legislature's intent to allow prior-bad-acts evidence to be introduced at trial as long as the evidence satisfies the "more probative than prejudicial" balancing test of MRE 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

other crimes or wrongs, but it does not violate separation of powers because it is substantive in nature); see also *Shultz*, 278 Mich App at 778-779.

[14] MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."

[15] *Pattison*, 276 Mich App at 620.

[16] As noted in the information filed by the prosecution, Cameron was initially charged under MCL 750.81(2), but his charge was enhanced to MCL 750.81(4) because this incident was his third offense.

by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Accordingly, this Court must make two distinct inquires under the balancing test of MRE 403. First, this Court must decide whether introduction of Cameron's prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and "weigh the probativeness or relevance of the evidence" against the unfair prejudice.[17] Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing Cameron's prior bad acts into evidence.

Under the first inquiry, we conclude that the trial court's decision to allow evidence of Cameron's prior bad acts did not unfairly prejudice Cameron at trial. The "unfair prejudice" language of MRE 403 " 'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.' "[18] Moreover, admission of "[e]vidence is unfairly prejudicial when- . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury."[19] However, the Michigan Supreme Court also recognizes that the prosecution does not have to use the least prejudicial evidence to make out its case.[20] In this case, the prejudicial effect of other-acts evidence did not stir such passion as to divert the jury from rational

[17] *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995).

[18] *Id.* at 452, quoting *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984); see also *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995) (noting that "[a] party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion").

[19] *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

[20] *Fisher*, 449 Mich at 452.

consideration of Cameron's guilt or innocence of the charged offenses.[21] In fact, the trial court minimized the prejudicial effect of the bad-acts evidence by instructing the jury that the issue in this case was whether Cameron committed the charged offense.

Under the second inquiry, we conclude that any prejudicial effect of the trial court's decision to allow evidence of Cameron's prior bad acts did not substantially outweigh the probative value of the evidence. A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible.[22] Here, the trial court found that Cameron's prior bad acts were relevant and therefore admissible to establish Yacheson's credibility.[23] The trial court also found that Cameron's actions were relevant to show that he acted violently toward Yacheson and that his actions were not "accidental" at the time of the incident. Additionally, the evidence of Cameron's actions on six separate occasions with Yacheson and on three separate occasions with Ponder demonstrated Cameron's propensity to commit acts of violence against women who were or had been romantically involved with him.

Therefore, Cameron's prior bad acts were relevant to the prosecutor's domestic violence charge under MCL 768.27b. Any prejudicial effect of admitting the bad-acts evidence did not substantially outweigh the probative value of the evidence, and the trial court did not abuse its discretion when it allowed Cameron's prior-bad-acts evidence to be introduced under MCL 768.27b.

---

[21] See *People v Starr*, 457 Mich 490, 503; 577 NW2d 673 (1998).

[22] *People v Hampton*, 407 Mich 354, 367; 285 NW2d 284 (1979) (COLEMAN, C.J.).

[23] Relevant evidence is any fact that is of consequence to the determination of the action. *People v McKinney*, 410 Mich 413, 419; 301 NW2d 824 (1981).

### III. SUFFICIENCY OF THE EVIDENCE

#### A. STANDARD OF REVIEW

As previously stated, on April 20, 2009, a jury found Cameron guilty of domestic violence (third offense).[24] Cameron argues that the prosecution failed to present sufficient evidence at trial to support a jury's conviction for domestic violence. When assessing a sufficiency-of-the-evidence argument, an appellate court will view the evidence in a light most favorable to the prosecution to determine if it would support a rational jury's finding that the elements had been proven beyond a reasonable doubt.[25] In applying this standard, a court must "draw all reasonable inferences and make credibility choices in support of the jury verdict."[26]

#### B. LEGAL STANDARDS

The charged offense, MCL 750.81(2), establishes the following guidelines for a domestic violence charge:

> Except as provided in subsection (3) or (4), an individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

---

[24] As noted in the information filed by the prosecution, Cameron was initially charged under MCL 750.81(2), but his charge was enhanced to MCL 750.81(4) because this incident was his third offense. The language of MCL 750.81(2) and MCL 750.81(4) is almost identical except that MCL 750.81(4) makes the domestic assault a felony punishable by imprisonment for not more than two years or a fine of not more than $2,500.

[25] *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).

[26] *Id.* at 400.

The relevant elements of the charged domestic assault offense include (1) the commission of an assault or an assault and battery and (2) a dating relationship between the parties.[27] Cameron does not dispute that he had a dating relationship with Yacheson.[28] However, Cameron denies that an assault or an assault and battery took place on the night of the incident.

The courts have defined a battery as " 'an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.' "[29] It does not matter whether the touching caused an injury.[30] Further, the courts have defined an assault as "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."[31] Thus, every battery necessarily includes an assault because a battery is the very "consummation of the assault."[32]

### C. APPLYING THE STANDARDS

In this case, Yacheson testified that Cameron pushed her twice. Yacheson stated that the second time that Cameron pushed her, Cameron pushed her against the refrigerator and stove with enough force to knock the refrigerator and stove askew. Yacheson also testified

---

[27] See MCL 750.81(4); CJI2d 17.2a.

[28] In addition, Yacheson's testimony at preliminary hearing established that she and Cameron had an on-and-off dating relationship.

[29] *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005) (citations omitted); CJI2d 17.2a(2).

[30] *People v Terry*, 217 Mich App 660, 663; 553 NW2d 23 (1996); CJI2d 17.15.

[31] *Starks*, 473 Mich at 234; CJI2d 17.2a(2).

[32] *Tinkler v Richter*, 295 Mich 396, 401; 295 NW 201 (1940) (citation and quotation marks omitted); *Terry*, 217 Mich App at 663.

that she tried to push Cameron away, and Cameron allegedly punched or jabbed her in the stomach. Officer Szydlowski testified that she arrived on the scene and observed Yacheson crying hysterically. Officer Szydlowski testified that Yacheson appeared very frightened of Cameron.

This Court previously determined that a defendant's "actions sometimes speak louder than words."[33] Intent may be inferred from all the facts and circumstances.[34] Further, "[a] defendant's intent may be inferred from his acts."[35] Because of the inherent difficulty of proving a defendant's state of mind, only minimal circumstantial evidence from which intent may be inferred need be presented.[36] Therefore, we conclude that the evidence satisfies the elements of assault or an assault and battery under MCL 750.81(2). Cameron's pushing, punching, or jabbing Yacheson certainly constituted an intentional, unconsented, and harmful or offensive touching. Further, regardless of how the touching started, Cameron clearly intended to commit an intentional touching or place Yacheson in apprehension of an intentional touching. Accordingly, we conclude that the evidence supported an inference that Cameron intended to commit an assault or an assault and battery against Yacheson.

On appeal, Cameron argues that insufficient evidence existed to support the jury's guilty verdict. However, at trial, Cameron did not testify and did not call

---

[33] *People v Strong*, 143 Mich App 442, 452; 372 NW2d 335 (1985) (citations and quotation marks omitted).

[34] *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001); *Strong*, 143 Mich App at 452.

[35] *People v Ng*, 156 Mich App 779, 785; 402 NW2d 500 (1986).

[36] *Strong*, 143 Mich App at 452; *People v Bowers*, 136 Mich App 284, 297; 356 NW2d 618 (1984).

any witnesses to contradict the prosecution witnesses' testimony. The Michigan Supreme Court has long recognized that "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses."[37] In this case, the jury listened to Yacheson's testimony and found it to be credible. Thus, when viewing the evidence in a light most favorable to the prosecution, a rational jury could find that the elements of a domestic assault had been proven beyond a reasonable doubt.[38] On appeal, Cameron argues that Yacheson invited Cameron over to her apartment, he brought food, he prepared the food, and he began drinking. Cameron claims that at some point, he voluntarily decided to leave Yacheson's apartment. Cameron also argues that when he returned to the kitchen to retrieve his beer from the freezer, Yacheson slammed the freezer door on his hand. Cameron asserts that he pushed Yacheson out of the way as he exited the apartment. Again, Cameron never elicited this testimony during the trial to rebut the evidence against Cameron. Thus, the jury presumably decided its verdict based on Yacheson's testimony about the incident. We conclude that sufficient evidence existed to support the jury's guilty verdict.

### IV. GREAT WEIGHT OF THE EVIDENCE

#### A. STANDARD OF REVIEW

Cameron argues that his conviction should be reversed and vacated because the jury's verdict went against the great weight of the evidence. An appellate court will review a properly preserved great-weight issue by deciding whether "the evidence preponder-

---

[37] *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

[38] *Nowack*, 462 Mich at 399-400.

ates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand."[39] However, when a party fails to preserve a great-weight issue for appeal, an appellate court will look for "plain error affecting the defendant's substantial rights."[40]

### B. LEGAL STANDARDS

An appellate court will only review issues that are properly raised and preserved at trial.[41] The preservation requirement induces litigants "to do what they can in the trial court to prevent error and eliminate its prejudice, or to create a record of the error and its prejudice."[42] Generally, an issue is not properly preserved unless a party raises the issue before the trial court and the trial court addresses and decides the issue.[43] To preserve a great-weight claim, a party must move for a new trial in the trial court.[44] An appellate court will review a properly preserved great-weight issue by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.[45]

---

[39] *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003) (citations omitted).

[40] *Id.* at 218.

[41] *People v Stanaway*, 446 Mich 643, 694; 521 NW2d 557 (1994); *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008).

[42] *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997); see also *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006).

[43] *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008); *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994); *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007); *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005).

[44] *People v Buck*, 197 Mich App 404, 416; 496 NW2d 321 (1992).

[45] *Lemmon*, 456 Mich at 642.

In this case, Cameron did not move for a new trial, so he failed to preserve the great-weight issue for appellate review. Therefore, we can only review Cameron's great-weight argument for plain error affecting his substantial rights. Any plain error that affects a party's substantial rights may be considered even though it was not brought to the court's attention.[46] A constitutional right "may be forfeited by a party's failure to timely assert that right."[47] To avoid forfeiture, the defendant bears the burden to show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error prejudiced substantial rights, i.e., the error affected the outcome of the lower court proceedings.[48] Further,

> once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error . . . " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence."[49]

### C. APPLYING THE STANDARDS

As previously stated, testimony of the prosecution witnesses provided evidence of a domestic assault or assault and battery. At trial, Yacheson testified that Cameron pushed her and punched or jabbed her in the stomach. Additionally, Officer Szydlowski testified that she observed Yacheson crying hysterically and that Yacheson appeared to be very frightened of Cameron.

---

[46] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), quoting FR Crim P 52(b).

[47] *Carines*, 460 Mich at 763, citing *United States v Olano*, 507 US 725, 731; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

[48] *Carines*, 460 Mich at 763.

[49] *Id.*, quoting *Olano*, 507 US at 736-737 (second alteration in *Carines*).

The prosecutor argues that this testimony supports an inference that Cameron intentionally committed an assault or assault and battery against Yacheson and that sufficient evidence exists to allow a rational jury to find that the elements of a domestic assault had been proven beyond a reasonable doubt.

In contrast, Cameron did not present any witnesses to contradict the prosecution's evidence. The jury heard all of the testimony, the jury deliberated, and then the jury found Cameron guilty of domestic violence. Now, on appeal, Cameron argues that his conviction should be reversed and vacated because the evidence presented at trial does not support a guilty verdict. Cameron claims that Yacheson invited him over to her apartment, he brought food, he prepared the food, and he began drinking. Cameron further states that at some point, he voluntarily decided to leave Yacheson's apartment and that he returned to the kitchen to retrieve his beer from the freezer. Cameron alleges that Yacheson slammed the freezer door on his hand and then he pushed Yacheson out of the way as he exited the apartment.

Despite his assertions to the contrary, we believe that Cameron has failed to show that an error occurred, that the error was clear and obvious, or that plain error prejudiced his rights by affecting the outcome of the trial. Further, to the extent that Cameron argues that Yacheson's statements to the police were inconsistent with her testimony at trial, "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial."[50] We conclude that the evidence supported the jury's finding that Cameron intentionally committed an assault or assault and bat-

---

[50] *Musser*, 259 Mich App at 219, quoting *Lemmon*, 456 Mich at 647.

tery against Yacheson and that the jury's verdict was not against the great weight of the evidence.

### V. CONCLUSION

The trial court did not abuse its discretion when it allowed evidence of Cameron's prior bad acts to be introduced at trial under MCL 768.27b. Further, when viewing the evidence in a light most favorable to the prosecution, a rational jury could find that the elements of a domestic assault had been proven beyond a reasonable doubt. Thus, sufficient evidence existed to support a jury's guilty verdict. In addition, Cameron failed to preserve his great-weight argument for appeal, and Cameron has failed to show that a plain error occurred at trial. Accordingly, the jury's verdict was not against the great weight of the evidence or manifestly unjust.

We affirm.