*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
October 15, 2019

No. 344506
Wayne Circuit Court
LC No. 17-008089-01-FC

THOMAS CECIL MCADAMS,

      Defendant-Appellant.

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of first-degree criminal sexual conduct (CSC-I) (personal injury), MCL 750.520b(1)(f). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 35 to 70 years' imprisonment. Defendant appeals his conviction. Finding no error, we affirm.

The offense in this case occurred on August 18, 2017, when the complainant was 14 years old. The proofs at trial established that she had ran away from home on that day and eventually accompanied a woman to a home so that she could charge her cell phone. Defendant was present at the home when the complainant arrived. She testified that she sat on the same couch as defendant and that he moved closer and began rubbing her arm. The woman then brought the complainant to an upstairs bedroom. The complainant testified that she lay on the bed and wrapped herself in blankets. She said that defendant then entered the room and lay next to her. According to the complainant, defendant made multiple attempts to get under the blanket with her and then pulled the blanket off her. He began touching her underneath her clothes. He asked the complainant if he could have sex with her, and she told him no. Defendant then pulled off her pants. She tried to stand up, but defendant pushed her back onto the bed. She tried to hold her legs closed, but defendant forced them apart, held them open with his elbows and forearms, unfastened his pants, and forcibly engaged in penile-vaginal penetration. The complainant testified that it hurt. She subsequently discovered that her vagina was swollen, bleeding, and painful.

Another woman found the complainant in the bathroom and asked what happened. The complainant was crying, and she told the woman that defendant had sexually assaulted her. The woman helped the complainant gather her belongings, and escorted her to the porch where she allowed the complainant to use her phone to call her mother and the police.

The next morning, the complainant was interviewed and had a sexual assault examination that revealed bruises on the thighs that she believed were from the assault. During the examination, DNA samples were collected from her vagina and they were sent to the Michigan State Police forensic laboratory for analysis. A comparison sample was taken from defendant. Forensic scientists were able to determine that there was male DNA in the complainant's sample that had been recently deposited, and there was a very high likelihood that the DNA belonged to defendant. It was also determined that the swabs from the complainant's vaginal area contained seminal fluid.

Defendant testified that the complainant came to the house where he was staying and discussed being depressed. He testified that he rubbed her on the arm to console her. He admitted that he touched her private areas with his hand, but he denied that he penetrated her or had sex with her. He claimed that he took the complainant to the bedroom where they smoked a joint with cocaine in it, that he left the house after they smoked, and that he did not know anything about the sexual assault allegations until he was arrested. He also claimed that he had erectile dysfunction and had not been able to have sex since 2014.

Defendant first argues that there was insufficient evidence of personal injury to justify the conviction. We disagree.[1]

Defendant was convicted of CSC-I under MCL 750.520b(1)(f), which states in pertinent part:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration.

---

[1] A challenge to the sufficiency of the evidence is reviewed de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). We review challenges to the sufficiency of the evidence by viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010). In applying this standard, we "must draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (quotation marks and citation omitted).

The term "personal injury," as used in MCL 750.520b(1)(f), means "bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." MCL 750.520a(n). In this case, the prosecutor asked the jury to find that the complainant suffered bodily injury or mental anguish. Viewing the evidence in a light most favorable to the prosecution, we conclude there was sufficient evidence for a reasonable jury to find defendant guilty under either theory.

The complainant testified that after the assault her vagina was swollen, painful, and bleeding. There were no signs of vaginal injury when the complainant was examined by the forensic nurse, but the nurse testified that this was not surprising given that the exam occurred six hours after the assault. The complainant also testified that there were bruises on her thighs that she believed were caused by the assault. This was sufficient evidence for a rational jury to find that the complainant incurred a bodily injury. See *People v Himmelein*, 177 Mich App 365, 377; 442 NW2d 667 (1989); *People v Hollis*, 96 Mich App 333, 337; 292 NW2d 538 (1980).

There was also sufficient evidence showing that the complainant experienced mental anguish. "[T]he term 'mental anguish,' in its ordinary and generally understood sense, means extreme or excruciating pain, distress, or suffering of the mind . . . ." *People v Petrella*, 424 Mich 221, 257; 380 NW2d 11 (1986) (quotation marks omitted). In *Petrella*, the following factors were used to determine whether the complainant had suffered mental anguish:

(1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.

(2) The need by the victim for psychiatric or psychological care or treatment.

(3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.

(4) Fear for the victim's life or safety, or that of those near to her.

(5) Feelings of anger and humiliation by the victim.

(6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.

(7) Evidence that the emotional or psychological effects of the assault were long-lasting.

(8) A lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack.

(9) The fact that the assailant was the victim's natural father. [*Id*. at 270-271.]

The jury in this case was instructed to consider substantially similar factors. See M Crim JI 20.10.

The complainant testified that she was crying during the assault and that she was crying in the bathroom after the assault. Similarly, the woman who found her testified that the complainant appeared scared and broke down crying. The complainant also testified that the assault caused her to develop panic attacks and anxiety attacks. One anxiety attack was so severe that an ambulance was called. She attempted suicide and underwent inpatient counseling for 13 days and testified that she no longer wanted to go out alone or stay home alone. She testified that she still suffered mentally from the effects of the assault. Although no one single factor outlined in *Petrella* is necessary to find mental anguish, 424 Mich at 270, here the evidence supported multiple factors. Accordingly, there was sufficient evidence of personal injury to support defendant's conviction.

Defendant raises additional issues in a Standard 4 brief. He argues that his counsel was ineffective for allegedly not informing him sooner of the possible repercussions of proceeding to trial as a fourth-offense habitual offender. He also argues that his counsel was ineffective for not presenting exculpatory physical evidence. We disagree.[2]

In order to show ineffective assistance of counsel, the defendant must establish (1) that the attorney made an error, and (2) that the error was prejudicial to defendant. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 311, 314; 521 NW2d 797 (1994). First, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012). Second, the defendant must show that, but for trial counsel's deficient performance, a different result would have been reasonably probable. *Id*.

At the beginning of trial, the prosecution placed a plea offer on the record that would have resulted in the dismissal of the fourth-offense habitual offender notice and a sentencing agreement of 16 to 30 years' imprisonment. Defendant argues that this is when he first learned that he was being charged as a habitual offender, and that his counsel was ineffective for not informing him of that fact sooner. However, the record belies defendant's claim. After the prosecutor recited the terms of the plea deal, defense counsel stated,

> Your Honor, I've explain that to Mr. McAdams, I explained exactly what the prosecution placed on the record.

---

[2] Generally, a claim of ineffective assistance of counsel is a mixed question of fact and constitutional law, and we review the trial court's findings of fact for clear error and questions of constitutional law de novo. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). However, because defendant did not file a motion for new trial or a *Ginther* hearing, our review of the claim of ineffective assistance of counsel is limited to mistakes apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

I believe—and Mr. McAdams did have an opportunity to speak to a family member. We have spent considerable time on this.

Thus, the record indicates that defendant had prior knowledge that he was being charged as a habitual offender because that was a part of the plea offer that he discussed with his counsel. Defendant fails to establish professional error on the record before us.

Defendant also fails to show outcome-determinative prejudice from the alleged error. Defendant actually attempted to avail himself of the plea offer. However, he refused to admit to the necessary factual predicate to satisfy the statutory conditions of CSC-I causing personal injury. In the colloquy with the trial court, defendant denied penetrating the complainant. After further questioning by the trial court, defendant eventually stated that his hand may have penetrated the complainant's vagina, but he could not say for sure. Neither the prosecution nor the trial court was satisfied with defendant's admissions, and thus, the trial court refused to accept defendant's plea. Significantly, there is no indication on the record that, had he been given more time to consider the offer, defendant would have admitted to penetration. Thus, defendant has not demonstrated a reasonable probability that additional notice of the 25-year mandatory minimum sentence would have led to a different result.

As for defendant's claim that his counsel was ineffective for not offering exculpatory "scientific evidence," he has not indicated what evidence counsel should have presented or how it would have aided his defense. Accordingly, he fails to establish professional error or that he suffered any prejudice from that alleged error.

Finally, defendant contends in his Standard 4 brief that the prosecutor committed error by seeking an enhanced sentence after trial based on defendant's habitual offender status. This argument is without merit. The fourth-offense habitual offender notice was provided in the original information.

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Douglas B. Shapiro