*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

COLBY ANTHONY SKIPPERGOSH,

Defendant-Appellant.

FOR PUBLICATION
October 28, 2024
12:47 PM

No. 364127
Emmet Circuit Court
LC No. 2022-005320-FH

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

RIORDAN, P.J. (*concurring in part and dissenting in part*).

I concur with the majority to the extent that it affirms defendant's convictions. However, I respectfully dissent to the extent that it vacates his sentence and remands to the trial court for resentencing.

In my view, the trial court did not err by scoring offense variable (OV) 3, MCL 777.33. The sentencing offense for OV 3 in this case was domestic violence, MCL 750.81(5), which necessarily includes "an assault or an assault and battery." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). "[A] simple criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Jones*, 443 Mich 88, 92; 504 NW2d 158 (1993) (cleaned up). In this case, the evidence shows that defendant dropped the baby during his altercation with W.F. in December 2021, which required taking the baby to the hospital for treatment. The fact that defendant dropped the baby while intoxicated clearly showed a lack of care for the well-being of others in the apartment, to the point where physical injury was a possibility. Further, the fact that defendant dropped the baby during his ongoing heated argument with W.F., which was interspersed with physical violence against W.F., likely contributed to the fear that W.F. felt that day. That is, the fact that defendant dropped the baby likely contributed to the fact that W.F. was placed in "reasonable apprehension of receiving an immediate battery" that day. See *id*. Consequently, the trial court did not err by ruling that the sentencing offense of domestic violence caused "[b]odily injury requiring medical treatment . . . to a victim." MCL 777.33(1)(d). Here, the victim was a baby. I would therefore affirm the trial court's calculation of the sentencing guidelines.

More importantly, I disagree with defendant that the trial court erred by sentencing him on the basis of acquitted conduct. At sentencing, the trial court summarized the relevant facts of the case and defendant's personal history, briefly stating when doing so that "[i]t is supported that Defendant attempted to choke his living-together partner, [W.F.], and the mother of his son [], and that he hit her . . . ." Defendant, however, was acquitted of the charge of attempted assault by strangulation, MCL 750.84(1)(b); MCL 750.92. The majority thus implies that the trial court may have violated *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), acknowledging that although "[w]e cannot say for certain, based on this record, that Skippergosh's within-guidelines minimum sentence of 55-months minimum was higher as a result of that consideration," the problem in *Beck* "was with the process of considering that [acquitted] conduct at all, not its outcome . . . ."

While I acknowledge that the majority's understanding of *Beck* is reasonable, I am not certain that it is correct. As explained by the Connecticut Supreme Court in *State v Langston*, 346 Conn 605; 294 A3d 1002 (2023), courts that have addressed acquitted conduct at sentencing fall within three categories: (1) most states find no constitutional violation when a sentencing court considers acquitted conduct or uses acquitted conduct to aggravate the sentence, (2) a minority of states completely prohibits any consideration of acquitted conduct at sentencing, and (3) another minority of states prohibits consideration of acquitted conduct only when it is used to aggravate the sentence. *Id*. at 630-633. The majority seemingly understands *Beck* as falling within the second category.

*Beck* indeed stated that "reliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment." *Beck*, 504 Mich at 629. From this statement, it might be inferred that *Beck* falls within the second category. However, other statements within *Beck* indicate that the decision should be understood as falling within the third category. See *id*. at 613-614 (framing the issue before the Court as whether "the trial court's reliance on conduct of which [the defendant] was acquitted to increase his sentence violates his constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution"); *id*. at 629 (holding that "[b]ecause the sentencing court punished the defendant more severely on the basis of the judge's finding by a preponderance of the evidence that the defendant committed the murder of which the jury had acquitted him, it violated the defendant's due-process protections"). In fact, footnote 24 of *Beck* strongly implies that the *Beck* majority itself understood and intended the decision to be limited to the third category. See *id*. at n 24 ("Thus, to the extent the distinction the dissent wants to draw between sentencing a defendant more harshly based on the conclusion that the defendant committed an offense of which he was acquitted and sentencing a defendant 'while considering conduct that supported the acquitted charge' is a meaningful one (and we are not convinced it is), this case plainly involves the former."). Therefore, in my view, applying ordinary principles of judicial precedent, *Beck* properly is understood as falling within the third category. See Garner et al., *The Law of Judicial Precedent* (St Paul: Thomson/West, 2016), p 91 ("Each such [legal] norm requires careful and individualized scrutiny of the scope intended by the authoring court.").[1]

---

[1] I acknowledge that *Langston* itself categorizes *Beck* as falling within the second category. See *Langston*, 346 Conn at 632. However, for the reasons explained herein, I doubt that this is correct.

As a result, defendant cannot be entitled to relief because, as the majority recognizes, there is nothing to establish that the trial court imposed a "higher" sentence as a result of its alleged consideration of acquitted conduct. Consequently, defendant has not satisfied his burden under the plain-error standard because he does not show that he was prejudiced by the trial court's alleged consideration of acquitted conduct. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.") (quotation marks and citation omitted). A contrary conclusion would both expand the scope of *Beck* itself and disregard the applicable standard of review. Indeed, the authoring justice of *Beck* herself implied that affording a defendant relief in these circumstances is unwarranted. See *People v Stokes*, 507 Mich 939, 939-940 (2021) (McCORMACK, C.J., *concurring*) ("Thus, the trial court did not punish the defendant more severely by finding by a preponderance of the evidence that he committed the acquitted offenses and sentencing him accordingly. And the defendant did not preserve these arguments in the trial court, so our review is limited to plain error. Since *Beck* does not plainly apply, the defendant cannot prevail.") (footnote omitted).[2]

Simply put, my primary concern in this case is not with the majority, which has reasonably understood *Beck* as prohibiting any consideration of acquitted conduct whatsoever at sentencing, but with a decision that we are bound to follow notwithstanding its use of inconsistent and seemingly conflicting language.[3] As illustrated by this particular case, *Beck* may be understood as creating some type of unusual, bright-line rule of structural error whereby the prohibited consideration of an alleged fact by the sentencing court automatically entitles a defendant to relief, regardless of whether that consideration actually affected the defendant's sentence, and regardless of whether the issue was preserved. In other words, while a rule of automatic reversal might be warranted in cases involving, for example, an actually biased sentencing judge, see *Rose v Clark*, 478 US 570, 577; 106 S Ct 3101; 92 L Ed 2d 460 (1986), I discern no principled reason why such a rule would apply in the context of the matter before us. Applying such a rule here is contrary to the manner in which our criminal-justice system typically operates, where improper consideration of an alleged fact by the factfinder requires application of a preservation-dependent harmless-error standard before a defendant is entitled to relief. See, e.g., *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999); *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

---

[2] In any event, I find no error whatsoever. The trial court prefaced its statement about attempted choking with the qualifier "[i]t is supported that." Thus, the most straightforward understanding of the trial court's statement is that it was noting precisely what conduct the trial evidence indicated occurred. And, there can be little doubt that the trial court correctly summarized the evidence in this regard—if the evidence did not show attempted choking, that charge never should have been submitted to the jury. Thus, any objection by trial counsel at sentencing would have been meritless. See *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021).

[3] Naturally, because the overwhelming majority of courts do not prohibit the consideration or use of acquitted conduct at sentencing, it is difficult to identify persuasive authority that would apply in this context.

For these reasons, I do not understand *Beck* as completely prohibiting any consideration of acquitted conduct at sentencing because a careful reading of that decision indicates that it only prohibits using acquitted conduct to aggravate a sentence. Moreover, defendant has not shown that he is entitled to relief under the plain-error standard of review that we are required to apply to unpreserved constitutional errors. Accordingly, I would affirm the trial court in its entirety.[4]

/s/ Michael J. Riordan

---

[4] Finally, while not addressed by the majority, I would conclude that the 55-month minimum sentence in this case was reasonable and proportionate. See *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023). Defendant has about two dozen previous convictions, many of them for assaultive conduct including, but not limited to, domestic violence. Further, as described above, the evidence showed that defendant has committed domestic violence against W.F. on at least two occasions, and on the day in question, he was so intoxicated that he dropped his baby, which required treatment at the hospital. There is nothing to suggest that defendant is either willing or able to conduct himself within the confines of the law. Moreover, I agree with the trial court that "the story that [he] gave was almost laughable in terms of what [he] tried to convince the jury actually happened." Under these circumstances, the 55-month minimum sentence, which was within the guidelines range, was reasonable and proportionate.