*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALEC LUCAS JONES,

        Defendant-Appellant.

UNPUBLISHED
July 09, 2025
2:04 PM

No. 371306
Oakland Circuit Court
LC No. 2023-286193-FH

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

Defendant, Alec Lucas Jones, repeatedly assaulted the victim while they were involved in a dating relationship. He was convicted by a jury of assault by strangulation, MCL 750.84(1)(b); assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a); and domestic violence, MCL 750.81(2), and thereafter sentenced to serve terms of imprisonment. On appeal, he challenges the sufficiency of the evidence supporting his convictions. We affirm.

## I. FACTUAL BACKGROUND

Defendant was involved in incidents of domestic abuse and assault committed against the victim after they began a dating relationship in June 2023. First, the victim was driving her car on I-696 when she confronted defendant about an allegation that he had cheated on her. He grabbed the steering wheel and told the victim: "[I]f we're breaking up, . . . you're going to die right now." Second, after defendant thought the victim had complimented another man, he "grabbed [her] up by [her] neck and . . . choked [her] and dragged [her] all the way back to [her] mom's car . . . ." Third, the victim testified that defendant "dumped . . . coffee all over" her, and then "choked [her] again." Fourth, the victim stated that, after an argument, defendant "squeezed my head in between his knees, and then dragged me . . . up the stairs to my bedroom . . . by my hair." Fifth, the victim stated that, while she was driving her car, defendant "started choking me to the point that I knocked out." She remembered saying "my legs aren't working[,]" but she was able to stop the car "before we went into . . . the main road[.]" Sixth, the victim testified she was on a FaceTime call with her friend when defendant "jumped up to choke me, and when he grabbed me, my phone went flying." Seventh, she stated that defendant "choked me and threw me, like . . . picked me up and threw me

-1-

on the wood floor and broke my glasses." She also stated that defendant "bit my nose[,]" leaving a "very bad" bruise.

The final incident took place on August 18, 2023, and August 19, 2023. Defendant grabbed the victim's neck with his hands until she "couldn't breathe." She stated that he "pick[ed] me up and [threw] me around like a rag doll." Also, defendant punched the victim "all over [her] legs[,]" and stomped on her. He grabbed the shotgun in the victim's room and put it up to her chest. After that incident, the victim had bruises and "dark mark[s]" on the top of her nose, her right cheek, her right arm, and her legs. She received a medical "strangulation assessment," at which she reported various symptoms, including difficulty breathing, dizziness, and throat pain.

Defendant was charged with five offenses: assault by strangulation; AWIGBH; assault with a dangerous weapon ("felonious assault"), MCL 750.82(1); carrying a gun during the commission of a felony ("felony-firearm"), MCL 750.227b(1); and domestic violence. At defendant's trial, the trial court denied his motion for a directed verdict, and the jury convicted defendant of assault by strangulation, AWIGBH, and domestic violence, but acquitted him of felonious assault and felony-firearm. Defendant now appeals.

## II. LEGAL ANALYSIS

On appeal, defendant challenges the sufficiency of the evidence supporting his convictions. This Court reviews a defendant's challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001); see *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). "[T]his Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). This deferential standard requires us to draw all reasonable inferences and make all credibility determinations in favor of sustaining defendant's convictions. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). Also, the prosecution "need not negate every reasonable theory of innocence; it need only prove the elements of the crime[s] in the face of whatever contradictory evidence is provided by the defendant." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020) (citation omitted).

The jury convicted defendant of two counts of violating MCL 750.84(1) and one count of domestic violence. A violation of MCL 750.84(1) can be established in two different ways. First, a defendant violates MCL 750.84(1)(a) by assaulting "another person with intent to do great bodily harm, less than murder." Second, a defendant violates MCL 750.84(1)(b) by assaulting "another person by strangulation or suffocation." Defendant was convicted of AWIGBH pursuant to MCL 750.84(1)(a) and assault by strangulation pursuant to MCL 750.84(1)(b). To support a conviction of AWIGBH under MCL 750.84(1)(a), the prosecution must prove "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder[,]" which means the "intent to do serious injury of an aggravated nature." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (quotation marks and citation omitted). In contrast, to support a conviction of assault by strangulation or suffocation under MCL 750.84(1)(b), the prosecution must prove (1) an assault (2) by strangulation or suffocation, which means " 'intentionally impeding normal breathing or circulation of the blood by applying pressure

on the throat or neck or by blocking the nose or mouth of another person.' " *People v Lydic*, 335 Mich App 486, 498 n 9; 967 NW2d 847 (2021), quoting MCL 750.84(2).

In order to prove the misdemeanor offense of domestic violence under MCL 750.81(2), the prosecution must prove "(1) the commission of an assault or an assault and battery and (2) a dating relationship between the parties." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). A battery means "intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citation omitted). An assault refers to "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *Id*. Accordingly, "every battery necessarily includes an assault because a battery is the very consummation of the assault." *Id*. (quotation marks and footnotes omitted). Because it is often difficult to prove a defendant's intent by direct evidence, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Thus, a jury can infer intent from a defendant's use of physical violence. *People v Dillard*, 303 Mich App 372, 377; 845 NW2d 518 (2013), abrogated on other grounds by *People v Barrera*, 500 Mich 14; 892 NW2d 789 (2017).

Defendant contends there was insufficient evidence to support his convictions of violating MCL 750.84(1)(a) and (b) and committing domestic violence because his acquittals of felonious assault and felony-firearm revealed that the victim "was not a completely believable complainant." Michigan law does not require that a complainant be "completely believable" for the complainant's testimony to provide sufficient evidence. Rather, a "jury may choose to believe part of a witness's testimony and disbelieve another part of the same witness's testimony." *People v Baskerville*, 333 Mich App 276, 283-284; 963 NW2d 620 (2020) (citations omitted). This Court may not second-guess a jury's choice to believe some of a witness's testimony because assessing witness credibility is a job for the jury, not the reviewing court. *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021). Because we must resolve all credibility determinations in favor of sustaining the jury's verdict, see *Oros*, 502 Mich at 239, defendant has not demonstrated that his convictions should be reversed.

Defendant regards his convictions of violating MCL 750.84(1) and domestic violence and his acquittals of felonious assault and felony-firearm as inconsistent. "Inconsistent verdicts within a single jury trial are permissible, and do not require reversal absent a showing of confusion by the jury, a misunderstanding of the instructions, or impermissible compromises." *Montague*, 338 Mich App at 51. Defendant has not identified any of those grounds for contesting an inconsistent verdict. Moreover, even if an inconsistent jury verdict could provide a basis for finding a lack of sufficient evidence, the jury's verdicts at defendant's trial were consistent. To convict a defendant of felonious assault, the prosecution must establish that the defendant assaulted the victim with a dangerous weapon. *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Similarly, an element of felony-firearm is that the defendant possessed a firearm. *Id*. Neither assault with a dangerous weapon nor possession of a firearm was necessary to convict defendant of violating MCL 750.84(1) or committing domestic violence. *Lydic*, 335 Mich App at 498. The jurors could have determined that defendant did not use or possess the shotgun, which the victim claimed he pointed at her, while at the same time finding that defendant assaulted the victim by strangulation and also with the intent to inflict great bodily harm during a dating relationship.

Finally, defendant argues that his convictions were based on speculative inferences, solely derived from the victim's testimony. But her testimony and the corroborating evidence presented at trial were not speculative; they provided sufficient evidence to sustain defendant's convictions. In *Dillard*, 303 Mich App at 378-379, we affirmed a conviction for AWIGBH based on evidence that the defendant "chased the victim, pulled her to the ground multiple times, dragged her across his driveway, [and] choked her . . . ." Similarly, in the instant case, the victim's description of the defendant's abuse constituted sufficient evidence to demonstrate that defendant intended to inflict great bodily harm. *Id*. Discussing the assault on August 19, 2023, the victim stated that defendant choked her until she "couldn't breathe." She said that he "pick[ed] me up and [threw] me around like a rag doll[,]" before repeatedly punching her and stomping on her. Further, the victim's boss confirmed that she had bruises on her arms when she showed up for work after the assaults. The strangulation assessment revealed that the victim had symptoms consistent with repeated choking, including difficulty breathing, throat pain, dizziness, and fainting. The jurors did not have to rely exclusively on the victim's testimony. The victim's descriptions of defendant's abuse—combined with the evidence corroborating her descriptions—was sufficient to prove that defendant assaulted her by strangulation, and that defendant intended to inflict great bodily harm upon her.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates

-4-