*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDDIE MARC WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
May 21, 2020

No. 346689
Wayne Circuit Court
LC No. 16-007134-01-FH

Before: BECKERING, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of second-degree arson, MCL 750.73(1), and was sentenced to 15 to 30 years' imprisonment. Defendant appeals his conviction. We affirm.

## I. BACKGROUND

This case arises out of an act of arson that occurred on October 15, 2015, in the city of Detroit. On that date, firefighters were called to 18650 Ferguson Street to extinguish an ongoing fire in a residential home. After the fire was extinguished and an investigation was completed, law enforcement officials determined that the fire began in the attic, and it appeared to be an act of arson. There were no individuals in the home when the fire occurred.

Detroit Development Company owned and managed the property at 18650 Ferguson Street. James Griffin was employed by Detroit Development, and he testified that in 2016 the company's owner, Zev Cohen, introduced him to defendant at the Detroit Development office building. Griffin testified that he encountered defendant again the next day and that during their conversation defendant brought up a recent house fire. According to Griffin, defendant stated that "he did a house fire for Detroit Development." Griffin testified that he knew defendant was referring to 18650 Ferguson Street because Detroit Development sent Griffin to remove the electrical panel from the home on the day after the fire occurred. Griffin reported the conversation to the police.

The police gave Griffin a handheld recording device to record any future conversations he had with defendant about the fire. Several weeks later, Griffin had a second conversation with defendant about the fire, and Griffin recorded the conversation. In the recording, defendant can

be heard stating, "I did Ferguson." Defendant went on to tell Griffin that he crawled into the attic of the home on Ferguson Street and started the fire. Defendant explained that he closed the door to the attic after he started the fire so that, "when the fire department got there, it was going to be hard for them to get to the main part where I started it." Griffin gave the recording to law enforcement officials. Several months later, defendant called Griffin and threatened him. Griffin recorded defendant's threat and gave the recording to the police. Both of the recordings were played at trial without objection.

In July 2018, defendant met with a police officer and admitted to starting the fire at 18650 Ferguson Street. At trial, defendant testified that this admission was false. He testified that he confessed to starting the fire because the police told him that they would drop the charges against him if he provided information regarding Cohen's involvement in setting the fire.

On appeal, defendant argues that: (1) he was denied due process of law because the prosecution presented perjured testimony; (2) the recordings were erroneously admitted at trial; and (3) he was denied the effective assistance of counsel. We disagree on all counts.

## II. DUE PROCESS

During trial, defendant did not argue that Griffin committed perjury or that the prosecutor knowingly presented false testimony. Accordingly, this issue is unpreserved and our review is for plain error affecting substantial rights.[1] See *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016).

> It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. [*People v Schrauben*, 314 Mich App 181, 187; 886 NW2d 173 (2016) (quotation marks and citation omitted).]

At the October 2018 trial, Griffin was asked on direct examination "whether [he] worked for a company called Detroit Development before?" Griffin responded, "[y]es." After the prosecutor asked Griffin to speak up, the following exchange occurred:

---

[1] Under a plain error analysis, "defendant must establish (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). An error affects a defendant's substantial rights if it affects the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only when the plain error resulted in the conviction of an actually innocent defendant or when an error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Kowalski*, 489 Mich at 506 (citation and quotation marks omitted).

> *Q.* Now, you said you have worked for Detroit Development, is that correct?
>
> *A.* Yes.
>
> *Q.* And how long did you work for Detroit Development?
>
> *A.* About two years.

On cross-examination, defense counsel asked Griffin, "[h]ow long have you worked for the Detroit Development Company?" Griffin responded, "[t]wo years."

Defendant argues that Griffin's testimony was contradictory because if Griffin had been working for Detroit Development Company for only two years as of October 2018, then he could not have been employed by Detroit Development in October 2015, when he purportedly worked on the Ferguson Street home after the fire. Griffin's testimony is not necessarily contradictory. It is ambiguous whether he was still working for Detroit Development at the time of trial or whether he was referring to a prior two-year period with the company. Also, his testimony indicates that two years was an estimation because his initial answer was "[a]bout two years." Perjury requires *willful* false testimony. See *In re Contempt of Henry*, 282 Mich App 656, 677-678; 765 NW2d 44 (2009). Further, mere contradictions in a witness's testimony are insufficient to establish that a prosecutor knowingly presented perjured testimony. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). There is no evidence that the prosecutor attempted to conceal any discrepancies in Griffin's testimony, and defense counsel could have attempted to impeach Griffin on this matter. While defendant argues that Griffin's testimony regarding the period in which he worked for Detroit Development rendered the remainder of his testimony untenable, it is the jury's role to determine the credibility of witnesses. *People v Cameron*, 291 Mich App 599, 616; 806 NW2d 371 (2011).

Defendant next asserts that the prosecutor knowingly presented perjured testimony because it is implausible that Griffin spontaneously encountered defendant after their first meeting. The evidence does not support the conclusion that Griffin's testimony about his subsequent meetings with defendant was false, or that the prosecutor knew it was false. Further, Griffin was cross-examined on this matter and defendant testified to the circumstances of his meetings with Griffin. As stated, it is the jury's role to determine the credibility of witnesses. *Cameron*, 291 Mich App at 616. Further, "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich. 55, 63; 594 N.W.2d 477 (1999). For these reasons, defendant fails to establish that the prosecutor knowingly presented perjured testimony through Griffin.

### III. THE RECORDINGS

Defendant's argument that Griffin's recorded conversations with defendant were inadmissible is unpreserved because defendant did not object at trial to the recordings' admission into evidence. See *Solloway*, 316 Mich App at 197.

Defendant argues that Griffin violated MCL 750.539c when he recorded conversations with defendant. That statute provides:

Any person who is present or who is not present during a private conversation and who wilfully uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both. [MCL 750.539c.]

Under MCL 750.539a(2), " '[e]avesdrop' or 'eavesdropping' means to overhear, record, amplify or transmit any part of the private discourse of others without the permission of all persons engaged in the discourse."

In *Sullivan v Gray*, 117 Mich App 476, 481; 324 NW2d 58 (1982), we determined that MCL 750.539a(2) "unambiguously excludes participant recording from the definition of eavesdropping by limiting the subject conversation to the private discourse of others. The statute contemplates that a potential eavesdropper must be a third party not otherwise involved in the conversation being eavesdropped on." *Id*. at 481 (quotation marks omitted). Accordingly, a participant in a conversation does not violate MCL 750.539c by recording the conversation without the other party's knowledge or consent. *Id*. We reaffirmed that interpretation of MCL 750.539a(2) and MCL 750.539c in *Lewis v LeGrow*, 258 Mich App 175, 185; 670 NW2d 675 (2003). Thus, Griffin did not violate MCL 750.539c when he recorded the conversations with defendant because Griffin was a participant in those conversations.

Defendant also suggests that the police officers and the fire chief violated MCL 750.539c by giving Griffin a recording device. Defendant does not elaborate on that assertion or support it with legal authority. Accordingly, he has abandoned this cursory argument. See *People v Huffman*, 266 Mich App 354, 371; 702 NW2d 621 (2005). In sum, defendant has not shown plain error on the basis of Michigan's eavesdropping statutes.

## IV. INEFFECTIVE ASSISTANCE

Finally, defendant argues that he was denied the effective assistance of counsel because defense counsel (1) failed to investigate Griffin's employment records and the owner of Detroit Development, (2) did not attend defendant's meeting with the police, and (3) failed to object to the admission of recordings at trial.[2]

To establish a claim of ineffective assistance of counsel, defendant must demonstrate that defense counsel's performance fell below an objective standard of professional reasonableness, and that, in the absence of counsel's unprofessional errors, there is a reasonable probability that

---

[2] Whether defense counsel performed ineffectively is a mixed question of law and fact. We review for clear error the trial court's findings of fact and review de novo questions of constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Because no *Ginther* hearing was held, our review is limited to mistakes apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

the outcome of the proceedings would have been different. *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004).

## A. FAILURE TO INVESTIGATE

The failure to undertake a reasonable investigation may constitute ineffective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 55; 826 NW2d 136 (2012). Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 52 (quotation marks and citations omitted). "[T]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks, citation and brackets omitted).

Defendant does not establish prejudice from defense counsel's alleged error to investigate Griffin's employment records. As discussed, Griffin's testimony regarding the length of his employment with Detroit Development was not necessarily contradictory, and defendant makes no offer of proof regarding Griffin's employment records. Significantly, defendant does not assert that Griffin was not employed by Detroit Development in 2015, when, according to his testimony, he worked on the Ferguson Street home following the fire. Further, Griffin presented compelling testimony regarding defendant's involvement in setting the fire at 18650 Ferguson Street. That testimony was supported by recordings in which defendant admitted to setting the fire as well as police officer testimony that defendant admitted to setting the fire. Thus, based on the record before us, defendant does not establish a reasonable probability that Griffin's employment records would have led to a different outcome at trial.

Defendant also fails to show that counsel's alleged failure to investigate Detroit Development's owner constituted ineffective assistance of counsel. The record does not indicate what investigatory efforts counsel made regarding Cohen. Nor does the record support defendant's assertion that defense counsel could have used information about Cohen to negotiate a favorable plea deal for defendant. Specifically, there is no indication that the prosecutor was willing to offer a plea deal for information about Cohen or that defendant would have accepted the plea deal. Thus, defendant fails to establish that defense counsel made a professional error and that he was prejudiced by that error.

## B. FAILURE TO ATTEND DEFENDANT'S MEETING WITH LAW ENFORCEMENT OFFICIALS

Defendant also fails to establish that defense counsel was ineffective for not being present at a July 30, 2018 meeting with the police and prosecutor. First, defendant's assertion that the prosecutor was present at this meeting is not supported by the record. Neither defendant nor any police officers testified that the prosecutor was present at the July 30, 2018 meeting. Second, there is no evidence that defense counsel knew defendant was meeting with the police on July 30, 2018. Third, it does not appear from the record that defendant wished to have defense counsel present at the meeting. A police officer testified that defendant came into the police station and asked to speak to him. The police officer informed defendant that his attorney should be present when they speak, and defendant responded that his attorney did not need to be there. Defendant also acknowledged that he initialed an advice of rights form, thereby indicating that he was aware of

his right to have an attorney present during the meeting. For these reasons, defendant has failed to establish ineffective assistance of counsel on the basis of defense counsel not being present for the July 30, 2018 meeting.

## C. FAILURE TO OBJECT TO THE ADMISSION OF RECORDINGS AT TRIAL

Lastly, defendant argues that he was denied the effective assistance of counsel when defense counsel failed to object to the admission of the recorded conversations on the grounds that the recordings had missing data. It is true that portions of the conversations between Griffin and defendant were either not recorded or not included in the recordings played at trial. It is unclear from the record, however, whether Griffin failed to record the entire conversations with defendant or whether the prosecutor omitted portions of Griffin's conversations with defendant. If additional recordings existed, defense counsel could have moved for their admission under the rule of completeness. See MRE 106. However, defendant offers no proof that there were other recordings or that they would have been favorable to the defense. Alternatively, if there were no other recordings, defendant fails to explain why the recordings played at trial were inadmissible. Defense counsel is not required to raise futile objections. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Further, while the recordings were certainly probative, they were not the sole proofs of guilt. Griffin and the police officer who spoke to defendant at the July 30, 2018 meeting both testified that defendant admitted to setting the fire at 18650 Ferguson Street. Defendant also acknowledged that he made those admissions and that he threatened Griffin. Considering the prosecution's other evidence, defendant has not shown a reasonable probability that the outcome at trial would have been different had defense counsel successfully objected to the admission of the recordings.

Affirmed.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro