*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DORIAN CHARNELL CLEMENTS,

        Defendant-Appellant.

UNPUBLISHED
October 15, 2020

No. 348517
Washtenaw Circuit Court
LC No. 18-000051-FH

Before: LETICA, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 14 to 40 years' imprisonment. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

In 2008, defendant was involved in a romantic relationship with a woman. The couple married and resided in a home together that also included her pre-teen daughters, DW and CW.[1] In 2016, the couple's relationship ended. After the relationship ended, DW and CW participated in an after-school program with a counselor at their school. During the session, DW disclosed that she was abused many years earlier by a man who no longer resided in her home. By law, the counselor was required to report the disclosure and contacted DW's parents and Children's Protective Services (CPS). An investigation followed, and defendant was charged with CSC-II.

At trial, DW testified that defendant would touch her "uncomfortably and say remarks that [were] really inappropriate to say to a child." She stated that defendant would use his hands and

---

[1] Defendant was initially charged with four counts of CSC-II; two of the counts related to DW and the other two related to her sister, CW. Defendant was acquitted of both counts pertaining to CW and one count involving DW. Consequently, the testimony of DW provides the foundation for defendant's single conviction of CSC-II.

-1-

penis to touch her butt, vagina, and breast. Defendant's touching occurred both on top of and under her clothing. DW testified that defendant would make her touch his penis. Although defendant's abuse occurred almost every day while her mother was at work, DW never told anyone about what defendant was doing to her because she felt "scared," "ashamed," and "disgusted." She also feared that if she told anyone, the family would be split up and she would be taken away from her mother.

DW finally disclosed the abuse to her sister, CW, in January 2017, during the after-school program when girls would sit in a circle and talk about things. DW addressed the topic of inappropriate touching because she wanted to know if CW was also abused. After discussing the issue with the counselor, DW attended a forensic interview. DW noted that she was uncomfortable during the interview and did not want to discuss the abuse.

At trial, the counselor also testified that she attended a group social setting during which women and girls gathered to discuss social and emotional aspects of their lives. On January 24, 2017, DW expressed "possible allegations of sexual abuse" by someone who lived in the house with her. The counselor noted that DW volunteered this information and was not being asked about it when she disclosed it. Apparently, the general conversation addressing influence "triggered" DW's report. When the counselor inquired further, DW stated that it was not happening currently, but it did happen some time ago. The counselor testified that DW was "really emotional," "cried a lot that day," and was in denial. The counselor notified DW's parents of the information and opined that they were "shocked."

In addition to the testimony of DW and CW, the prosecutor introduced evidence of defendant's prior conviction of criminal sexual conduct. Through the testimony of the investigating officer and a prior victim, the jury learned of other acts of sexual abuse defendant committed upon family members.

Defendant denied committing any sexual abuse upon DW and CW and raised the issue of fabrication. He claimed that he gave DW and CW things, but stopped the activity in light of his engagement and the impending birth of his child. Defendant also theorized that the mother of DW and CW was jealous. Of the four counts of CSC-II submitted to the jury, defendant was convicted of one count of CSC-II upon DW.

## II. OTHER-ACTS EVIDENCE

Defendant first argues that the trial court abused its discretion when it admitted other-acts evidence of defendant's 1994 conviction of CSC-II and other alleged criminal sexual conduct. We disagree.

We review a preserved evidentiary challenge for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008).

MCL 768.27a(1) provides, in relevant part, that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed

another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."[2]

The purpose of MCL 768.27a was explained in *People v Watkins*, 491 Mich 450, 472; 818 NW2d 296 (2012):

> When a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b). In many cases, it allows evidence that previously would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context. [Quoting *People v Anderson*, 276 Mich App 613, 618-619; 741 NW2d 558 (2011).]

Thus, although MCL 768.27a prevails over MRE 404(b), MCL 768.27a still remains subject to MRE 403. See *Watkins*, 491 Mich at 455-456. MRE 403 provides that "a court may exclude relevant evidence if the danger of unfair prejudice, among other considerations, outweighs the evidence's probative value." *Watkins*, 491 Mich at 456. The unfair prejudice language in MRE 403 "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit . . . ." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted). Notably, when applying the MRE 403 balancing test to evidence admissible under MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 456.

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Id*. at 487-488.]

Further, "a defendant's character and propensity to commit the charged offense is highly relevant because an individual with a substantial criminal history is more likely to have committed a crime than is an individual free of past criminal activity." *Id*. at 470.

---

[2] Defendant does not dispute that his prior CSC-II conviction satisfied the listed offense requirement.

In this case, defendant argues that the trial court abused its discretion because it failed to balance the prejudicial effect of the evidence when it allowed the introduction of testimony from Chief Harshberger and TS relating to defendant's 1994 CSC-II conviction and other alleged sexual conduct. In analyzing the relevancy aspect, the trial court discussed that the current charges involved his stepchildren who were between the ages of nine and twelve at the time, and the similar nature of the other acts. On the basis of this, the court stated that the

> evidence could tend to show the defendant's using an opportunity to exploit domestic relationships[,] his intent or system in doing acts or absence of mistake or accident and the proffered other acts testimony could tend to refute the defendant's assertion that the instant crimes didn't occur or that he didn't commit those crimes. So, they are logically relevant.

In applying the MRE 403 balancing test to the other-acts evidence, the trial court began with addressing the similarities between the other acts and the charged crime. The court discussed how the other-acts evidence involved "two stepchildren eight and nine at the time and one cousin of a stepdaughter who was five." During one of these alleged incidents, defendant grabbed one of the children "and tried to pull her pants down." On other occasions, defendant was able to "pull her pants down as well as he rubbed his penis between her buttocks and another involved a five year old where he placed his hand inside her pants and his penis on her buttocks." Defendant admitted "some of these prior acts to police including inserting his finger momentarily into the five year old's vagina." The court noted that "[a]ll of the incidents occurred inside of home settings."

The trial court did not err by analyzing the admission of the other-acts evidence in light of MCL 768.27a. The trial court compared these incidents to the current offenses in which defendant was charged with four counts of CSC-II. The trial court found that the touching of the genital areas in the charged offenses were "similar in nature" to the other-acts evidence. The trial court properly concluded that the other-acts evidence was relevant and admissible for propensity purposes. See *Watkins*, 491 Mich at 470. The trial court also found that the age of the conviction was not preclusive because MCL 768.27a contained no time limitations. Further, the fact that defendant admitted the prior offense weighed in favor of admission.

Finally, the trial court evaluated the need for the other-acts admissibility. It stated that "[a]lthough the children in the charged offense are older now, they . . . don't have much experience testifying in court under cross-examination." On the basis of this, the court stated that "there is need for evidence beyond what is alleged to have occurred in this case. That need is a little bit greater." The defendant "allegedly told investigators in 2017 that the story came out after his wife and victims found out about his affair with another woman so this increases the need for evidence beyond complainant's and defendant's testimony."

Accordingly, after acknowledging possible prejudice in the introduction of the other-acts evidence, the trial court found that, "after weighing the considerations under the circumstances presented here, the probative value of the evidence of the other acts is not substantially outweighed by a danger of unfair prejudice." See *Watkins*, 491 Mich at 490. This decision did not constitute an abuse of discretion.

## II. HEARSAY

Next, defendant alleges that the counselor's testimony regarding DW's disclosure of sexual abuse was inadmissible hearsay. We disagree.

Defendant did not raise this issue in the trial court, and therefore, it is unpreserved. *Cameron*, 291 Mich App at 617. Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*.

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is inadmissible. MRE 802. However, if "the proponent of the evidence offers the statement for a purpose other than to prove the truth of the matter asserted, then the statement, by definition, is not hearsay." MRE 801(c); *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013).

> An out of court statement may also be offered to show the speaker's state of mind. The statement may be a direct assertion of the speaker's state of mind or it may indirectly tend to establish that the speaker had a particular state of mind. If the statement is a direct assertion of the speaker's state of mind, then it is offered for the truth of the matter asserted but it usually falls within an exception to the hearsay rule for declarations of a then existing state of mind. If the statement only indirectly tends to prove a certain state of mind then it is not hearsay because the truth of the assertion and the credibility of the declarant are not relied upon. Rather, the fact that the statement was made, regardless of its truth, is relevant to show the speaker's knowledge, intent, or some other state of mind. [*People v Jones*, 228 Mich App 191, 206; 579 NW2d 82 (1998) (quotation marks and citations omitted).]

Defendant submits that the statements made by the counselor addressing DW's abuse by a resident of her home years ago were hearsay and that no exception applies. Specifically, defendant argues that because DW was 17 years old when she made the statements to the counselor, she does not meet the hearsay exception found under MRE 803A, which allows for out-of-court statements when the declarant was under the age of 10. Although defendant is correct that, because of DW's age, MRE 803A does not apply, he is incorrect in asserting that the statements made by the counselor were hearsay at all.

The counselor's testimony indicated that DW volunteered abuse by an occupant of her home years ago. Her statement did not disclose the perpetrator or the specific acts of abuse that were committed upon her. Thus, the counselor's testimony was not used to prove the truth of the matter asserted. See MRE 801(c). It merely established the she was required to notify DW's parents and CPS of the disclosure and provided the starting point of the investigation. Indeed, the counselor was not provided details of the abuse. Further, the counselor's testimony became relevant in light of defendant's theory of the case that DW's family fabricated the allegations after

the dissolution of his marriage and new family. Accordingly, the counselor's testimony regarding DW's emotional statement was not used to prove the truth of the matter asserted, that defendant was guilty of the crimes charged. See MRE 802; see also *People v Gursky*, 486 Mich 596, 625; 786 NW2d 579 (2010) (testimony about a victim's emotional reactions is admissible as nonhearsay because they are nonassertive conduct).[3] Defendant did not demonstrate plain error affecting his substantial rights arising from the failure to object to properly admitted evidence. See *Carines*, 460 Mich at 764.

### III. OFFENSE VARIABLE (OV) 10

Lastly, defendant submits that there was no evidence of predatory conduct to support a 15–point score for OV 10. We disagree.

"The interpretation and application of the sentencing guidelines present questions of law that [this Court] review[s] de novo." *People v Laidler*, 491 Mich 339, 342; 817 NW2d 517 (2012). Factual determinations relating to the sentencing scoring variables are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Dickinson*, 321 Mich App 1, 20-21; 909 NW2d 24 (2017).

OV 10 addresses the exploitation of vulnerable victims. MCL 777.40(1). Fifteen points must be assigned to OV 10 when "predatory conduct was involved." MCL 777.40(1)(a). "Predatory conduct" is preoffense conduct directed at a victim for the primary purpose of victimization. MCL 777.40(3)(a); *People v Cannon*, 481 Mich 152, 157; 749 NW2d 257 (2008). Predatory conduct must be more than purely opportunistic in nature. *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011). The timing and location of an offense can be evidence of predatory conduct. *People v Witherspoon (After Remand)*, 257 Mich App 329, 336; 670 NW2d 434 (2003). A victim's youth can render him susceptible to physical restraint or temptation, and thus, predation, by an adult. *People v Johnson*, 298 Mich App 128, 133; 826 NW2d 170 (2012).

Ten points must be assigned to OV 10 when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). "Abuse of authority" means that a victim was exploited out of fear or deference to an authority figure, including a parent, physician, or teacher. MCL 777.40(3)(d); *Cannon*, 481 Mich at 157. "Exploit" is defined as "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b).[4]

---

[3] We reject defendant's additional argument that counsel was ineffective for failing to object to this hearsay evidence. In light of our conclusion that the testimony did not constitute hearsay and was properly admitted, defendant cannot meet his burden of proving ineffective assistance. *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). Indeed, "[d]efense counsel is not required to make a meritless motion or a futile objection." *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).

[4] Defendant does not dispute that an OV 10 score of 10 points would be appropriate because DW satisfied the requirements for an exploited victim.

The record in this case reflects that defendant committed the instant offense by sexually abusing his 10-year-old stepdaughter. Although defendant was convicted of only one count, DW testified that the abuse happened on multiple occasions over a three-year period. She described that defendant would touch her "uncomfortably and say remarks that [were] really inappropriate to say to a child." She said that defendant would use his hands and penis to touch her butt, vagina, and breast; he would do this both on top of and under her clothing. Additionally, she stated that defendant would make her touch his penis almost every day, and that defendant made skin-to-skin contact with her "so many times" that she could not "even count." DW explained that she did not disclose the sexual abuse because she feared the consequences to her family and removal from her mother's care.

Furthermore, the trial court found that defendant was "an adult male who had a prior CSC conviction. He did time. He garnered the trust of the mother of the child again, same type of situation as in the past. This is something that happened in the home." In light of these facts, the court held that defendant's actions were an "exploitation of a vulnerable victim in a home setting."

Accordingly, we conclude that the record supports and the trial court did not err by finding that defendant's conduct was predatory conduct used to exploit DW, his vulnerable 10-year-old stepdaughter. Defendant's actions of using an opportunity to exploit the trust that he garnered from DW's mother fits the statutory definition of predatory conduct. The assessment of 15 points under OV 10 was proper. See MCL 777.40(3)(b); see also *Johnson*, 298 Mich App at 133; *Witherspoon (After Remand)*, 257 Mich App at 336.

Affirmed.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ James Robert Redford

-7-