*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARVIN ISADORE BROWN,

        Defendant-Appellant.

UNPUBLISHED
March 21, 2024

No. 363854
Wayne Circuit Court
LC No. 21-008454-01-FC

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant appeals following his jury trial convictions of first-degree criminal sexual conduct (CSC-I) (victim under 13 and defendant over 17), MCL 750.520b(2)(b), second-degree criminal sexual conduct (CSC-II) (victim under 13 years old), MCL 750.520c(1)(a), and assault with intent to commit criminal sexual conduct involving penetration (AWICSP), MCL 750.520g(1). Defendant was sentenced to 25 years to 25 years and 1 day imprisonment for CSC-I, 2 to 15 years' imprisonment for CSC-II, and 3 to 10 years' imprisonment for AWICSP, all to run concurrently. We affirm.

Defendant was convicted of sexually assaulting the victim on two different days, resulting in three convictions. The incidents occurred when the victim was under 13 years old. At trial, the victim testified that, on an evening when she and her family were at defendant's house, defendant led her and two toddlers to the basement under the guise of giving them candy. While the children were in the basement, defendant reached into the victim's pants, touched her buttocks, and continued "digging" in her pants. Next, defendant removed his hand, pushed the victim onto a tote, and placed his penis near her face, attempting to make the victim perform fellatio. The victim had to turn her face away to avoid defendant's penis. Subsequently, on July 5, 2021, while defendant was at the victim's house, defendant told the victim to go to the basement and sit on the stairs. Defendant followed the victim into the basement and proceeded to digitally penetrate her while masturbating. The victim watched as defendant ejaculated onto the step next to her. The other household members were sleeping at the time this occurred. Subsequently, the victim revealed these incidents to her father, and her mother. Her mother called the police and Officer Jamie Zack of the Detroit Police Department responded and conducted an initial interview with

the victim. Officer Zack did not employ forensic interview techniques when she spoke with the victim. Though defendant denied each of the victim's allegations, the jury convicted defendant of CSC-I, CSC-II, and AWICSP.

On appeal, defendant argues he was denied a fair trial because he was convicted based on the victim's testimony, which was tainted and unreliable as a result of Officer Zack failing to employ forensic interview techniques during the victim's initial interview. We conclude that, because Officer Zack only performed the victim's initial interview, she did not err by failing to employ forensic interview techniques. However, even if Officer Zack erred by not using forensic interview techniques, defendant failed to demonstrate that he was prejudiced thereby.

Defendant failed to preserve this issue because he did not object to the admission of the victim's testimony at trial. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal.") (citation omitted). An unpreserved issue is reviewed for plain error affecting substantial rights. *Id*. (citation omitted). To show plain error, a defendant must prove "1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected his substantial rights, meaning it affected the outcome of the proceedings." *People v Jarrell*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356070); slip op at 8-9. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

In short, defendant argues that, because Officer Zack's initial interview of the victim did not follow the protocol typically used for a child's forensic interview, the victim's testimony was tainted, and therefore, his conviction was unjust because it was based on the tainted testimony. Defendant failed to demonstrate an error occurred, let alone a plain error, because Officer Zack only performed an initial interview with the victim that was conducted in response to the 911 call, not a forensic interview. This was not a full interview; it was only Officer Zack's attempt to gather information for the police report. MCL 722.628 requires counties to develop standard child abuse interview protocols. Wayne County's child abuse and neglect interview techniques are limited to forensic interview techniques. See State of Michigan, Governor's Task Force on Child Abuse and Neglect and Department of Health and Human Services, *Forensic Interviewing Protocol* (4th ed.).[1] Accordingly, it appears only forensic child abuse interviews are subject to specific protocols. Because Officer Zack did not perform a forensic interview with the victim, she was not required to employ the forensic interview techniques.

But if Officer Zack erred by not employing forensic interview techniques, defendant failed to show that the alleged error affected the outcome of the proceedings because he provided no proof for his allegation that Officer Zack's initial interview with the victim somehow tainted her testimony at trial, or even resulted in a change to the victim's testimony. See *People v Smart*, 304

---

[1] Available at < https://www.michigan.gov/mdhhs/-/media/Project/Websites/mdhhs/Adult-and-Childrens-Services/Abuse-and-Neglect/Forms-and-Publications/DHS-PUB-0779.pdf?rev=e616e91287f543219b1e7d1beb906248&hash=4ED9AF3BA70EB9F0323B2B8957A213A7> (accessed December 21, 2023).

Mich App 244, 251; 850 NW2d 579 (2014) (holding a defendant-appellant may not "merely announce a position and leave it to this Court to rationalize the basis for the claim, or elaborate the argument."). Additionally, defense counsel had the opportunity to thoroughly cross-examine the victim, thereby giving defendant the opportunity to expose to the jury any inconsistencies or unreliability in her testimony. The jury was also aware that Officer Zack was not trained to perform forensic interviews. Moreover, the credibility of a witness is a matter that rests in the sole discretion of the jury. *People v Montague*, 338 Mich App 29, 45; 979 NW2d 406 (2021) ("[I]t is up to the jury to . . . evaluate the credibility of witnesses.") (citation omitted).

It is apparent that the jury believed the victim was credible because each of defendant's convictions rested on the truthfulness of the victim's testimony. Given that the jury found the victim to be credible, we will not override the jury's credibility finding. *Id*. Furthermore, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018). Therefore, particularly in the absence of any evidence from defendant suggesting otherwise, we conclude that the victim's testimony was reliable (not tainted), and thus, defendant was not denied a fair trial by its admission.

Defendant also argues there was insufficient evidence to support each of his convictions. We conclude that a rational trier of fact could find that the evidence proved defendant's guilt beyond a reasonable doubt.

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Oros*, 502 Mich at 240.

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021) (citation omitted). "Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime." *Kenny*, 332 Mich App at 403. "In criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated." See *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016) (citation omitted). Defendant was convicted of CSC-I, CSC-II, and AWICSP.

First, defendant argues that his conviction for CSC-I was improper because the prosecutor did not demonstrate, in response to defense counsel's objection, that the digital penetration allegation was part of the charged conduct. Preliminarily, defendant failed to provide any proof that the evidence regarding digital penetration was not part of the CSC-I charge. Consequently, this issue is abandoned. See *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

Moreover, defendant's argument is without merit because the amended felony information stated defendant committed CSC-I when he digitally penetrated the victim—clearly demonstrating that the victim's testimony about defendant digitally penetrating her was part of the charged conduct. Furthermore, defendant's argument hinges on his assertion that the prosecutor did not adequately respond to defense counsel's objection—that the penetration evidence was uncharged conduct. But at trial, defense counsel only objected to the victim's testimony that defendant licked her, not the digital penetration testimony. Therefore, defendant's claim, that the prosecutor failed to properly respond to defense counsel's objection about the digital penetration testimony, is erroneous because defense counsel did not object thereto.

Finally, the victim's testimony was sufficient to support defendant's CSC-I conviction. "The elements of CSC-I in this case are: (1) the defendant engaged in sexual penetration, (2) with a person under 13 years of age." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014). "Sexual penetration means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). Additionally, defendant was convicted under MCL 750.520b(2)(b), which requires the perpetrator be over 17 years old and the victim under age 13. The victim's father testified that defendant had just turned 40 at the time of trial, meaning he was over 17 years old before the victim was even born, let alone when these incidents occurred.

The victim testified that defendant pulled her pants down and put his finger inside her vagina while masturbating. Although the victim did not identify the date when this took place, the victim was only 12 years old at the time of trial, meaning this incident (and the others) took place while she was under 13 years old. Accordingly, based on the victim's testimony, a rational trier of fact could have found defendant guilty of CSC-I. See *Solloway*, 316 Mich App at 181 ("In criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated.") (citation omitted).

Further, the victim's testimony was also corroborated by her parents, who both testified that defendant was at their house on July 5, 2021. Her father testified that he felt uneasy after finding defendant upstairs by the bathroom with the victim five minutes after the victim and defendant went into the house, suggesting there may have been something odd going on between defendant and the victim. He also confirmed that everyone planned to take a nap on July 5, 2021, and explained they did so because he and defendant had been up all night talking. Even defendant testified that he was at the house on July 5, 2021, and that he laid down for a nap that day. In summary, the evidence was more than sufficient for a rational trier of fact to find defendant guilty of CSC-I.

The victim's testimony was also sufficient for a rational trier of fact to find defendant guilty of CSC-II. "The elements of CSC-II are: (1) the defendant engaged in sexual contact, (2) with a person under 13 years of age." *Duenaz*, 306 Mich App at 106 (citation omitted). In this context, sexual contact means "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose[.]" MCL 750.520a(q). Intimate parts include "the primary genital area, groin, inner thigh, buttock, or breast[.]" MCL 750.520a(f).

Defendant argues that, based on the victim's description of defendant touching her buttocks, the touching was so fleeting that it could not have been done for the purpose of sexual arousal or gratification. The victim testified that, after defendant led the victim and a couple toddlers into the basement, defendant placed his hand inside her pants and underwear, directly onto her buttocks. The victim did not describe how long defendant's hand was on her buttocks, but she said defendant was "digging" in her pants. The victim's use of the word, "digging," especially when viewed in the light most favorable to the prosecution, portrays a purposeful and substantial fondling. See *Kenny*, 332 Mich App at 402-403 (holding appellate courts must view the evidence in the light most favorable to the prosecution when analyzing the sufficiency of the evidence). Further, this touching was not an accidental or fleeting brush, as defendant describes it, because defendant had to reach beneath the victim's belt, pants, and underwear to touch her buttocks. Stated differently, this was an intentional touching. See *Oros*, 502 Mich at 240 (holding a reviewing court is required to draw all reasonable inferences in support of the jury verdict). Defendant's subsequent actions, when viewed in the light most favorable to the prosecution, confirm that the purpose of this touching was sexual in nature because, after defendant removed his hand from the victim's buttocks, he pushed her down and tried to get her to perform fellatio. In light of the foregoing, we conclude a rational trier of fact could have found defendant guilty of CSC-II.

The elements of AWICSP include, "(1) an assault, meaning an attempt to commit a battery or an unlawful act that places another person in reasonable apprehension of an imminent battery; and (2) an intent to commit CSC involving sexual penetration." *People v Hoskins*, 342 Mich App 194, 204; 993 NW2d 48 (2022). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011) (citations omitted). An assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *Id.* (citations omitted).

The victim testified that defendant pushed her down onto the tote and then put his penis near her face in an attempt to get her to perform fellatio. Although there was some conflicting testimony about how close defendant's penis was to the victim's face, defendant came close enough to her face that she had to turn her face away to avoid defendant's penis. The victim's testimony was sufficient for a rational trier of fact to conclude defendant assaulted the victim by attempting to commit a battery or by causing her reasonable apprehension that defendant was going to commit a battery. Defendant tried to put his penis into the victim's mouth, which, if successful, would have amounted to an intentional, nonconsensual, and offensive touching, being the victim tried to avoid having defendant's penis in her mouth and was scared during the incident. *Id.* The victim's testimony was also sufficient for a rational trier of fact to conclude defendant intended to "commit CSC involving sexual penetration" because sexual penetration includes fellatio, which is what the victim testified defendant attempted to make her do. See MCL 750.520a(r) (explaining "sexual penetration" includes fellatio).

Additionally, the facts relevant to defendant's CSC-II and AWICSP convictions were also partially corroborated by the victim's parents, who both recalled being present on that day. The mother confirmed that there were times when both the victim and defendant were gone from her and the other adults on that day. The father remembered defendant asking if he could give the children candy, and subsequently taking them to the basement—as the victim testified.

Importantly, the victim included the minor detail that defendant never gave them candy, and her father recalled that none of the children had candy when they returned upstairs. Even defendant admitted that he took the children to the basement during a gathering when her family was present. Accordingly, testimony from the parents and defendant corroborate various elements of the victim's testimony.

The victim's mother also testified that she believed the victim when the victim disclosed the incidents related to defendant's three convictions. And the father testified that he made the victim repeat her stories seven times to determine whether she was telling the truth. After the victim gave the same, unaltered stories seven times, he concluded she was telling the truth. The victim gave her father many details about each incident. This was significant because he wanted to find a hole in the victim's story to exculpate his best friend, but he was unable to. Her father asked her ten times if she was lying and also threatened the victim that she could go to jail if she was lying, but she did not change her story, lending further credence to the truthfulness of the victim's testimony. Both parents also testified that the victim was petrified when defendant came to their house after the incidents occurred, evidencing that something had happened between defendant and the victim that caused her significant fear.

Although defendant denied doing the things of which the victim accused him, it is apparent that the jury determined the victim was credible since the defendant's convictions rested on the truthfulness of the victim's testimony and there were no other witnesses who testified directly to the charged conduct. Because the jury found the victim to be credible, we will not override the jury's credibility finding. See *Montague*, 338 Mich App at 45 ("[I]t is up to the jury to . . . evaluate the credibility of witnesses.") (citation omitted); see also *People v Lowrey*, 342 Mich App 99, 123; 993 NW2d 62 (2022) ("Differing versions of events merely establish that it is for the jury to determine witness credibility and resolve inconsistencies of testimony.") (quotation marks and citation omitted). Furthermore, "[i]n criminal sexual conduct cases, a victim's testimony may be sufficient to support a defendant's conviction and need not be corroborated." *Solloway*, 316 Mich App at 181. Therefore, because the jury determined the victim was a credible witness, and the victim's testimony contained facts sufficient for a rational trier of fact to find defendant guilty of CSC-I, CSC-II, and AWICSP, defendant's argument fails.

Affirmed.

/s/ Kathleen A. Feeney
/s/ James Robert Redford
/s/ Christopher P. Yates

-6-