*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD SCOTT,

Defendant-Appellant.

UNPUBLISHED
April 24, 2025
11:37 AM

No. 336815
Macomb Circuit Court
LC No. 2014-003902-FC

ON REMAND

Before: BOONSTRA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

This case reaches this Court for the fifth time after our Supreme Court reversed this Court's decision in *People v Scott (On Remand)*, 343 Mich App 49; 996 NW2d 750 (2022) (*Scott IV*), and remanded to this Court (for the third time) to "(1) assess in light of the full record developed at trial whether the prosecution presented evidence at defendant's trial that violated MRE 404(b), and (2) if so, whether defendant is entitled to a new trial under the standard for preserved nonconstitutional errors." *People v Scott*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164790) (*Scott V*); slip op at 29, reh den ___ Mich ___; 10 NW3d 658 (2024). We affirm defendant's conviction and remand for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This Court set forth the facts underlying this case in *People v Scott*, unpublished per curiam opinion of the Court of Appeals, issued January 30, 2020 (Docket No. 336815) (*Scott III*), vacated 509 Mich 978 (2022):

In August 2012, defendant went to a hotel where the victim was living. Defendant approached the victim's room under the guise of providing her with drugs to fuel her addiction. Defendant then threatened the victim with a gun and forced her to perform oral sex on him. After the oral sex, defendant forced the victim to lay face down on the bed as he penetrated her vagina with his penis. Defendant ejaculated

-1-

on the victim's back and then wiped his semen off with a towel. Defendant then left the hotel room without further incident. [*Scott III*, unpub op at 1.]

Defendant was charged with two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e) (sexual penetration while armed with a weapon); being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and armed robbery, MCL 750.529.

The extensive appellate history of this case started before trial, when the prosecution moved for the admission of other-acts evidence under MRE 404(b), specifically evidence of other alleged sexual assaults committed by defendant. The trial court denied the prosecution's motion; the prosecution applied for leave to appeal that denial, which this Court granted. See *People v Scott*, unpublished order of the Court of Appeals, entered April 21, 2016 (Docket No. 331512). The trial court stayed the proceedings pending the outcome of the prosecution's interlocutory appeal.

In *People v Scott*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2016 (Docket No. 331512) (*Scott I*), this Court reversed the trial court's decision, determined that the other-acts evidence was admissible under MRE 404(b), and remanded for further proceedings. See *Scott I*, unpub op at 3. Defendant applied to the Michigan Supreme Court for leave to appeal this Court's decision in *Scott I*. Despite defendant's pending application for leave to appeal, the trial court held defendant's trial and permitted the prosecution to introduce other-acts evidence. Defendant was convicted of two counts of CSC-I, but he was acquitted of the remaining charges. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to consecutive prison terms of 356 to 660 months for each CSC-I conviction. During the sentencing hearing, defendant objected to the consecutive sentencing and to the scoring of Offense Variable (OV) 12.

Approximately two weeks after defendant was sentenced, our Supreme Court denied defendant's application to appeal this Court's decision in *Scott I*. See *People v Scott*, 500 Mich 935 (2017). Defendant subsequently took an appeal by right from his convictions and sentences. See *People v Scott*, unpublished per curiam opinion of the Court of Appeals, issued January 24, 2019 (Docket No. 336815) (*Scott II*). In *Scott II*, this Court held that the trial court had lacked subject-matter jurisdiction when it held defendant's trial and sentenced him, citing this Court's decision in *People v Washington*, 321 Mich App 276, 285; 908 NW2d 924 (2017) (*Washington I*), vacated and remanded 503 Mich 1030 (2019) (holding that a defendant's timely application for leave to appeal a judgment of the Court of Appeals divests the trial court of jurisdiction while the application is pending). Because the trial court lacked jurisdiction at all relevant times, this Court vacated defendant's convictions and sentences and remanded for a new trial without reaching defendant's other appellate issues. *Id.* at 4-5.

The prosecution applied for leave to appeal this Court's decision in *Scott II*. While that application was pending, our Supreme Court vacated this Court's decision in *Washington I*, and remanded for further proceedings. See *People v Washington*, 503 Mich 1030 (2019). The Court subsequently entered an order vacating this Court's decision in *Scott II*. The Court remanded the case and instructed this Court to hold it in abeyance until this Court decided *Washington* on remand. See *Scott*, 504 Mich at 939. In *People v Washington (On Remand)*, 329 Mich App 604,

606-607; 944 NW2d 142 (2019) (*Washington II*), rev'd 508 Mich 107 (2021), this Court determined that trial-court proceedings conducted while an application for leave to appeal was pending with the Michigan Supreme Court did not result in a jurisdictional error, but merely a procedural error subject to harmless-error analysis. Notably, the *Washington* case involved an appeal from a final order of the trial court, not an interlocutory appeal.

After *Washington II* was decided, this Court decided *Scott III*, holding that the trial court's action in continuing defendant's trial while his application for leave to appeal was pending was not a jurisdictional error, was harmless, and did not require reversal. *Scott III,* unpub op at 3. The *Scott III* panel then considered the remaining issues raised by defendant, holding that (1) defendant had not established that he received the ineffective assistance of counsel, (2) defendant's challenge to the admission of other-acts evidence was foreclosed by the law-of-the-case doctrine, and (3) resentencing was required under our Supreme Court's decision in *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019). *Id*. at 3-7.

Defendant applied to our Supreme Court for leave to appeal *Scott III*. While that application was pending, the Court issued its opinion in *People v Washington*, 508 Mich 107; 972 NW2d 767 (2021) (*Washington III*). In *Washington III*, our Supreme Court reversed this Court's decision in *Washington II*, holding that the trial court indeed lacked subject-matter jurisdiction when it conducted proceedings while the defendant's application for leave to appeal was pending in our Supreme Court. *Id.* at 107. On May 6, 2022, our Supreme Court then entered an order vacating this Court's decision in *Scott III* and remanding for reconsideration:

> Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE the judgment of the Court of Appeals and we REMAND this case to that court for reconsideration in light of [*Washington III*, 508 Mich 107]. On remand, the Court of Appeals shall address whether this Court's decision in *Washington* [*III*] applies to the interlocutory appeal at issue in this case. [*People v Scott*, 509 Mich 978, 978-979 (2022).]

Notably, the Court's order vacated this Court's judgment and therefore effectively vacated our *entire* opinion in *Scott III*, see MCR 7.215(E)(1) ("[w]hen the Court of Appeals disposes of . . . an appeal, . . . its opinion or order is its judgment"), not merely the section regarding jurisdiction and the application of *Washington II*. *Id.*

On remand, this Court issued *Scott IV*, concluding that, under *Washington III*, the trial court had lacked jurisdiction when it tried defendant while leave to appeal was pending with our Supreme Court. *Scott IV*, 343 Mich App at 55 ("The question before this Court is whether the Court's ruling in *Washington III* applies to the interlocutory appeal at issue in this case. We see no meaningful distinction between this case and *Washington III*, and therefore we conclude that the same result is required.").

The prosecution applied for leave to appeal *Scott IV* to our Supreme Court. In lieu of granting leave to appeal, the Court issued an opinion reversing *Scott IV* and remanding to this Court for further proceedings, stating in relevant part:

During these proceedings, defendant applied in this Court for leave to appeal a Court of Appeals judgment that remanded the case to the trial court for further proceedings. Under those circumstances, an automatic stay of the remand proceedings was in place that barred the trial court from addressing aspects of that interlocutory appeal. The significant question presented in this case is whether a trial court is divested of subject-matter jurisdiction over a case during such an interlocutory appeal. We hold that the trial court was barred by our court rules from holding a trial during which evidence disputed in the pending interlocutory appeal was admitted.

Notwithstanding this error, we hold that the trial court's failure to adhere to the automatic stay mandated by MCR 7.305(C)(6)(a) was a procedural error that did not deprive the court of subject-matter jurisdiction. Interlocutory appeals, in contrast to appeals from final orders, do not divest a trial court of subject-matter jurisdiction over a case. A trial court is divested of subject-matter jurisdiction upon entry of a final order. Until that time, the trial court retains general subject-matter jurisdiction over the case while an interlocutory appeal is pending.

The mechanics of interlocutory appeals are entirely the product of court rules promulgated by this Court pursuant to our constitutional imperative to "establish, modify, amend and simplify the practice and procedure in all courts of this state." A trial court's error committed while an interlocutory appeal is pending has no effect on the trial court's general subject-matter jurisdiction over the case. Rather, such error is preserved for review by courts exercising appellate jurisdiction upon entry of the trial court's final order. Accordingly, we hold that interlocutory appeals do not divest the trial court of its subject-matter jurisdiction. A trial court's error arising during or from the taking of an interlocutory appeal is subject to subsequent appellate review following entry of the final order. [*Scott V*, ___ Mich at ___; slip op at 2-3 (citations omitted).]

As noted, the Supreme Court concluded its opinion as follows:

We hold that a trial court's failure to adhere to court rules staying a proceeding while an interlocutory appeal is pending is a procedural error and that any such error can be remedied through subsequent appellate review after a final judgment is entered. Interlocutory appeals, in contrast to appeals from final orders, do not divest a trial court of subject-matter jurisdiction over a case. In this case, the Court of Appeals has yet to separately address the merits of the issues presented in defendant's direct appeal that had been preliminarily reviewed during defendant's interlocutory appeal. Accordingly, we reverse and remand to the Court of Appeals to (1) assess in light of the full record developed at trial whether the prosecution presented evidence at defendant's trial that violated MRE 404(b), and (2) if so, whether defendant is entitled to a new trial under the standard for preserved nonconstitutional errors. [*Scott V*); slip op at 29 (footnote omitted).]

These proceedings on remand followed.

## II. OTHER-ACTS EVIDENCE

Defendant originally argued that the trial court erred by admitting other-acts evidence concerning alleged sexual assaults committed by defendant under MRE 404(b). Although defendant has twice conceded that the law-of-the-case doctrine applies to this issue, we read our Supreme Court's remand order as requiring us to conduct our own analysis of the trial court's admission of evidence. *Scott V*, ___ Mich at ___; slip op at 29. We conclude that the trial court properly admitted the challenged evidence.[1]

MRE 404(b) regulates the admissibility of evidence of "[o]ther crimes, wrongs, or acts . . . ." MRE 404(b)(1) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Michigan Supreme Court has explained that the rule is one " 'of legal relevance' that 'limits only one category of logically relevant evidence': '[i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible.' " *People v Jackson*, 498 Mich 246, 258; 869 NW2d 253 (2015), quoting *People v VanderVliet*, 444 Mich 52, 61-63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

"Underlying the rule [MRE 404(b)] is the fear that a jury will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *Watkins*, 491 Mich at 468, quoting *People v Crawford*, 458 Mich 376, 384; 582 NW2d 785 (1998). MRE 404(b), however, "is not exclusionary, but is inclusionary, because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *People v Mardlin*, 487 Mich 609, 616; 790 NW2d 607 (2010). The "nonexhaustive list of reasons" includes "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or

---

[1] As noted later in this opinion, the application of MRE 404(b) to the evidence at issue in this case may have been rendered moot by the comparatively recent amendment of MCL 768.27b. In short, if a new trial were to be granted, the evidence's admissibility likely would be considered under MCL 768.27b, rather than MRE 404(b). See *People v Pattison*, 276 Mich App 613, 616; 741 NW2d 558 (2007) (holding that when testimony "is admissible under MCL 768.27b," this Court "need not review whether the [] evidence was also admissible under MRE 404(b)"); *People v Deleon*, unpublished per curiam opinion of the Court of Appeals, issued September 18, 2007 (Docket No. 269574), p 3, lv den 480 Mich 1141 (2008) (holding that, in light of the enactment of MCL 768.27b, "remand would only result in redundant trial proceedings, so [the] defendant's arguments regarding his fiancée's MRE 404(b) evidence are moot"); *People v Knepper*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363191); slip op at 8 n 1 ("Although unpublished opinions of this Court are not binding precedent, they may . . . be considered instructive or persuasive.") (Quotation marks and citation omitted; alteration in original.). We nonetheless consider the applicability of MRE 404(b) in light of our Supreme Court's directive in *Scott V*.

acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

Our Supreme Court has formulated a four-part test to determine whether other-acts evidence was properly admitted at trial:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich 385, 398; 901 NW2d 306 (2017), quoting *VanderVliet*, 444 Mich at 55.]

For the first step, during the trial court proceedings, the prosecution argued that the other-acts evidence was being offered to prove plan, scheme, or system of behavior, which is a proper purpose listed under MRE 404(b)(1). *Denson*, 500 Mich at 398.

Regarding the second step, our Supreme Court has "emphasized the importance of logical relevance, calling it the 'touchstone' of the admissibility of other-acts evidence." *Denson*, 500 Mich at 401. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id.*; see also MRE 401. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Id.* (quotation marks and citation omitted). "Evidence is probative if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id.* at 401-402, quoting MRE 401. When determining evidence's probative value under MRE 404(b)(1), "the proffered evidence truly must be probative of something other than the defendant's propensity to commit the crime." *Denson*, 500 Mich at 402 (quotation marks and citation omitted).

With respect to a claim that the evidence was relevant to prove a plan, scheme, or system, our Supreme Court has stated: "[W]e clarify that evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63. Further, "[l]ogical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." *Id.* at 64. "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." Id. at 65-66 (quotation marks and citation omitted).

In this case, defendant was tried on two counts of CSC-I after he was accused of sexually assaulting the victim. At the time of the assault, the victim was using prescription painkillers and heroin and living in a motel. Evidence at trial showed that defendant knocked on the victim's motel-room door unprompted and asked the victim if she wanted to try some of the heroin he was selling. The victim agreed to do so, but before defendant came inside the room he began acting strangely, which included reaching around in his pocket for an inordinate amount of time. As he entered the room, defendant took out a gun and pointed it at the victim, pressing it to her head.

After asking her if she had any money or a cell phone, defendant took the victim's driver's license and military identification card. Defendant then instructed the victim to get on her knees and perform fellatio on him. She did as instructed, at gunpoint. Eventually, defendant told the victim to lie on the bed, face down, with her feet still on the floor; defendant then penetrated the victim's vagina with his penis. Defendant ejaculated on the victim's back and used a nearby towel to clean up.

At trial, the prosecution offered the testimony of two women, RM and JT, who testified that defendant had sexually assaulted them. RM testified that in 2013, she was staying at a motel and working as a prostitute through online advertisements in order to support her alcohol and cocaine addiction. RM received a phone call from a man she later identified as defendant and negotiated an agreement to have sex with him in her room for money. RM testified that when defendant arrived, he was acting strangely, "like there was something wrong." Once inside RM's hotel room, defendant choked RM, held her a gunpoint, and forced her to lie face down on the bed before penetrating her vagina, ejaculating on her back, and cleaning up with a towel. He then forced RM to perform fellatio on him. Defendant took RM's phone with him when he left.

JT testified that in 2014, she was also staying at a motel and working as a prostitute through online advertisement. JT received phone calls from defendant and arranged to meet for sex. When defendant arrived, he immediately asked JT if there were police outside; his behavior made JT feel "very weird" and sick to her stomach. After entering her room, defendant held JT at knife point and told her to lie on the bed face down; he then threatened to kill her unless she either had sex with him or gave him fellatio. Defendant then forced JT to perform oral sex on him before having her again lie face down on the bed while he penetrated her vagina, ejaculated on her back, and cleaned up with a washcloth. Defendant told JT to take a shower afterward, and watched to make sure she did so. He then told her not to call the police or he would find her and kill her. Defendant took her phone and identification with him when he left.

We agree with the trial court that this testimony was similar enough to the charged conduct in this case "to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63. In all three cases, the victims were vulnerable young women living in a motel. Additionally, all of the victims were engaged in some form of illegal behavior. Defendant reached out to the victims in the context of their illegal behaviors. In each case, defendant acted strangely before entering the victims' motel rooms. Each victim testified that defendant's behavior made them feel nervous. Further, defendant threatened each victim with a weapon before sexually assaulting them, either a gun or a knife. The actual sexual assaults committed by defendant were also done in a very similar manner. In each case, defendant ordered the victims to lie on the bed face down, climbed on top of them, penetrated their vaginas with his penis, ejaculated on the victims, and used nearby towels or washcloths to clean up his semen. Additionally, defendant stole a personally identifying item from each of the victims. Defendant used his possession of those items to either inferentially or expressly threaten retaliation if any of the victims contacted the police.

It is clear that the alleged sexual assaults of JT and RM were extremely similar to the charged conduct in this case, and were much more than "a series of similar spontaneous acts . . . ." *Sabin*, 463 Mich at 65-66 (quotation marks and citation omitted). Instead, the sexual assaults revealed behavior "sufficiently similar to support an inference that they are manifestations of a

common plan, scheme, or system." *Id.* at 63. While there were minor differences in each sexual assault, they were not required to be identical to be admitted under MRE 404(b). Sabin, 463 Mich at 63-64. In sum, because the other-acts evidence allowed the jurors to "make an inference that they [were] manifestations of a common, plan, scheme, or system," the trial court correctly determined that it was logically relevant to the stated purpose for the evidence, as required under MRE 404(b). *Sabin*, 463 Mich at 63-64.

Regarding the third step, a court must consider whether relevant evidence must nonetheless be excluded under MRE 403. *Denson*, 500 Mich at 398. Under MRE 403, even relevant and otherwise admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. Notably, MRE 403 does not regulate evidence that is simply "prejudicial" because "[r]elevant evidence is inherently prejudicial." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995) (citation omitted), mod 450 Mich 1212 (1995). Rather, "[i]t is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *Id.* To make such a determination, "[f]irst, this Court must decide whether introduction of [the] evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair prejudice." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011) (quotation marks and citation omitted). "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Gipson*, 287 Mich App 261, 263; 787 NW2d 126 (2010), see also *Mills*, 450 Mich at 75. Such concerns arise when "the tendency of the proposed evidence [is] to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App at 611 (quotation marks and citation omitted). Additional concerns include "the danger of confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Watkins*, 491 Mich at 489 (quotation marks and citation omitted).

In this case, there was a risk of unfair prejudice to defendant caused by the admission of the other-acts evidence. *Cameron*, 291 Mich App at 611. Defendant was not charged with the sexual assault of JT and RM; therefore, there was at least a chance that the jury could have become confused about the purpose of their testimony and convict defendant on the basis of the other-acts evidence, rather than because they found beyond a reasonable doubt that defendant had assaulted the victim in this case. However, the trial court's instructions to the jury included an explicit statement they were required to find defendant sexually assaulted the victim beyond a reasonable doubt to convict him of each count of CSC-I. Further, the evidence was highly probative of material facts at issue in this case. The extensive similarities was highly suggestive that they were carried out by the same person, and both JT and RM identified their attacker as defendant. In RM's case, defendant's DNA was also matched to DNA found on a towel that RM testified was used by her attacker to clean up. Given the high level of probative value, the danger of unfair prejudice caused by the other-acts evidence simply cannot "substantially outweigh" that value. MRE 403. As a result, the evidence was not excludable under MRE 403. *Cameron*, 291 Mich App at 611.

Regarding the final step of the analysis, as stated, the trial court did give a limiting instruction regarding how the evidence was to be used by the jury. *Denson*, 500 Mich at 398.

Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). Accordingly, the trial court's instruction bolsters our conclusion that the challenged evidence was correctly admitted.

Because we hold that the trial court properly admitted the other-acts evidence at issue under MRE 404(b), we hold that reversal is not warranted. Additionally, we note that, were we to find that the trial court *had* erred under MRE 404(b) by admitting the other-acts evidence, the 2018 amendment of MCL 768.27b(4) would permit the admission of this evidence on retrial. See MCL 768.27b, as amended by 2018 PA 372; see also *People v Schultz*, 278 Mich App 776, 778-779; 754 NW2d 925 (2008), citing *People v Pattison*, 276 Mich App 613, 618; 741 NW2d 558 (2007) (holding that MCL 768.27b may be applied to other-acts evidence that occurred before the statute took effect). Under these circumstances, even if the trial court had erred in its original admission of evidence, defendant's arguments regarding MRE 404(b) would appear to be moot. *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994). Nonetheless, because our Supreme Court expressly instructed us to consider the admission of the challenged evidence under MRE 404(b), we have done so.

### III. OTHER ISSUES

In the previous section, we followed our Supreme Court's direction to consider on remand the trial court's admission of other-acts evidence under MRE 404(b). We were not instructed to consider any other issues; however, we note that, because our Supreme Court vacated this Court's entire opinion in *Scott III*, the other appellate issues raised by defendant in his direct appeal remain unaddressed in a now-legally-binding opinion. We certainly respect the "well-accepted principle in our jurisprudence that a lower court must strictly comply with, and may not exceed the scope of, a remand order." *Int'l Bus Machines, Corp v Dep't of Treas*, 316 Mich App 346, 352; 891 NW2d 880 (2016). But in this procedurally complex case, which has already been the subject of multiple appeals to the Supreme Court and remands to this Court and the trial court, we do not discern from our Supreme Court's most recent opinion an intent, this Court having now reached the conclusions set forth in this opinion, not to have this Court once again also address the substantive issues that we decided in *Scott III* but that were effectively rendered unaddressed by the Supreme Court's May 6, 2022 order. These issues, if not readdressed by this Court, will undoubtedly be the subject of additional, future appeals and remands.

Accordingly, with respect to those other issues, we adopt in full our reasoning in *Scott III* concerning defendant's ineffective assistance of counsel claim and claims of sentencing error, see *Scott III*, unpub op at 3-7, and hold that (1) defendant has not established that he received the ineffective assistance of counsel, and (2) resentencing is required under our Supreme Court's decision in *Beck*.

We therefore affirm defendant's conviction and remand for resentencing in light of *Beck*, noting once again that that if the trial court again chooses to impose consecutive sentences, it must

"articulate on the record the reasons for each consecutive sentence imposed." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien


MARKEY, J., not participating, having resigned from the Court of Appeals effective January 1, 2025.